[ *221 ]          *NORTHROP *vs.* WRIGHT.

In a controversy in an action of *ejectment* between one claiming under a *prior possessor* and the other under a *subsequent possessor*, the obtaining of a deed by a predecessor of the latter from several of the heirs of the *prior possessor*, is an admission of title in their ancestor.

Such deed fastens upon the grantee and those claiming under him the character of a *tenant in common* with the grantee of the *other heirs* of the *prior possessor*, and the possession held under such deed *is not adverse* to the rights of the other grantee, unless the presumption arising from the acceptance of the deed be satisfactorily explained.

Possession of twenty-seven years by one tenant in common, although during all that time the right of the co-tenant had not been recognised, WAS HELD, in this case, not to be sufficient to authorize a jury to presume an *ouster*, where before twenty-five years had elapsed, the co-tenant had made an *actual entry* upon the land, and was forcibly expelled.

Whether a certificate of the acknowledgment of a deed taken in 1784, not stating that the grantor was *known* to the officer, be sufficient to authorize the reception of the deed in evidence, *quere*.

Where a will produced on the trial of a cause was more than fifty years old, *it was held* that the legal presumption attached that the witnesses were dead, and that the party might resort to *secondary evidence* to prove the will; and that its production with the probate attached was sufficient evidence to authorize its being read.

A grantor's declarations after he has parted with his title are not admissible to affect his grantee; yet, where such declarations have been received as evidence, a new trial will not on that ground be granted on a *case* made, where the court see that the result would be the same if the evidence was rejected—on a *bill of exceptions*, however, it would be of course in such case to grant a new trial.

THIS was an action of *ejectment*, tried at the New-York circuit in March, 1837, before the Hon. OGDEN EDWARDS, one of the circuit judges.

The plaintiff claimed to recover an undivided third part of one-eighth of a lot of about 10 acres of land, situate in the city of New-York. He proved that one *Arnout Webbers* was in possession of the premises previous to 1784, and died in possession. The plaintiff produced from the surrogate's office in the city of New-York, the last will and testament of *Arnout Webbers*, bearing date 23d August, 1776, whereby the testator devised

to *seven* of his children and *one* grand-child all his *estate, real* and personal, without however *specifying any particular prem- [ *222 ] ises, to be divided between them, share and share alike. On the back of the will was endorsed the probate thereof and the granting of letters testamentary by the judge of the court of probates of this state under date of the 13th September, 1784. The will was read in evidence without other proof of its execution, though objected to by the defendant's counsel. It was proved that after the death of *Arnout Webbers*, his son *Philip* entered into possession of the premises, and continued in possession three or four years, when he surrendered the possession to *Medcef Eden ;* but upon what terms, or for what cause, did not appear. The plaintiff also produced in evidence a deed of the *one-eighth* of the premises, bearing date 13th September, 1784, executed by *John Webbers*, a son of *Arnout Webbers*, to *Joel Northrop*. This deed was acknowledged 14th December, 1784, before Roger Sherman, one of the justices of the superior court of Connecticut, who certified that John Webbers, " signer and sealer of the foregoing instrument," appeared " and acknowledged the same to be his own free act and deed." The counsel for the defendant objected to the deed being read in evidence, on the ground that the execution thereof had not been sufficiently proved ; but the objection was overruled. The plaintiff proved that in 1812 or 1813, Mrs. Van Orden, one of the children of *Arnout Webbers*, pointed out the premises in question as the lot which belonged to her father : this evidence was also objected to, but received. He also proved that *Joel Northrop*, the grantee of *John Webbers*, died in 1807 or 1810, and that he (the plaintiff) was one of three heirs of *Joel Northrop ;* that in 1820, an agent of his erected a house on the premises in question, which was torn down by the defendant, and the agent turned out of possession. Whereupon this action was brought in July term, 1834.

The defendant proved that *Medcef Eden* was in possession of the premises in 1795, and continued in possession until his death in 1798, having by his last will and testament devised the premises to his son Medcef, who succeeded him in the possession. On the 7th July, 1801, the interest of *Medcef Eden in the premises was conveyed by the sher- [ *223 ] iff of New-York, in pursuance of a sale by virtue of an execution, to W. Barlow and J. Sharp. In 1805, the interest of Barlow and Sharp became vested in *A. Kinder* and *B. Bakewell*, whose interest by sundry mesne conveyances became vested in the defendant in 1825. A continued possession was shown from Medcef Eden down to the defendant; none of the conveyances, however, containing covenants of title, the deeds being mere quit-claims.

To rebut the effect of this testimony, the plaintiff read in evidence a deed bearing date 21st December, 1807, executed by all the devisees of *Arnout*

*Webbers*, (except his son *John*, who had conveyed to *Northrop*,) to *A. Kinder* and *B. Bakewell*, under whom the defendant claims title, conveying to them all the interest of the grantors in the premises in question.

The jury under the charge of the judge found a verdict for the *plaintiff*, and the defendant on a *case* made moved for a new trial.

*J. Miller*, for the defendant.

*W. S. Sears & S. P. Staples*, for the plaintiff.

*By the Court*, COWEN, J.  No title in either party having been proved by direct evidence, the stress of the controversy at the trial lay upon the possessions under which the parties respectively claimed.  Of the defendant's general possession and that of those under whom he claimed for a period sufficient to satisfy the statute of limitations, no doubt was made; indeed such possessions were admitted at the trial—their character alone was disputed.  Of the prior possession of Arnout Webbers, there was very little direct evidence; but what there was, when connected with the deed of 1807, from all his heirs except John, to Bakewell and Kinder, made out a very strong circumstantial case in favor of the possession; and I think entirely warranted the learned judge in the assumption, that it was made out, by which he introduced his charge to the jury.  The defendant [ *224 ] claims *under Bakewell and Kinder; his title being derived from nothing beyond quit-claim deeds coming down from Medcef Eden, who appears to have succeeded Philip Webbers in a possession which he took from his father Arnout.  Certainly there is nothing, as the judge remarked, to show an abandonment of possession by Arnout or his heirs; at least no direct evidence.  The possession of Arnout was prima facie evidence of a fee in him, and it came in a course of regular transmission, either by devise or descent to his heirs, seven of whom quit-claimed to the predecessors of the defendant in 1807.  This is the same, in legal effect, as if the defendant had taken that deed to himself; and leaves it difficult for the mind to resist the idea that all parties considered Arnout as one having held the prior title.  Such an act amounts to a clear concession by the defendant himself that he must look to Arnout Webbers, not Medcef Eden, as the source of his title.  It sanctions all that could be inferred from the plaintiff's witnesses on the head of Arnout's possession, and superadds a virtual admission that he claimed a fee.

This deed to Bakewell and Kinder, when viewed in connection with the other evidence in the cause, was also properly treated as having another effect.  It fastened on them and their successors the character of co-tenant with the plaintiff and his ancestor, in the proportion of seven parts in the

former to one-eighth or a part of that in the latter; from which the defendant certainly could not clear himself without showing some positive act by which he or those under whom he came in, disclaimed such a relation, and that, so long as twenty-five years before suit brought. No such act was shown directly, nor was there anything, that I see, from which the jury could have been left to infer it. We have nothing but general possession of one tenant in common. *That* he had a right to; and the law always intends that a man is in according to his right, until the contrary appears. It accordingly intends, in this case, that the defendant and his privies had all along holden the total possession of the land both for themselves and the plaintiff or his privies, with whom the former held a friendly not an adverse relation. *Such an intendment is fatal to the defence, [ *225 ] so far as it rests on adverse possession.

I am aware of no cases either in this or any other court which stand opposed to the views I have expressed. The better opinion is, that mere general possession of land or other property, even without explanation, must be received as *prima facie* evidence of absolute ownership. To this point I collected several authorities in note 309, 1 *Phil. Ev. p.* 353, 354, *of the Notes by Cowen & Hill.* I shall not go over them; for the doctrine is not now denied. It must, then, be taken as a fact presumptively established, that Arnout Webbers was, in his life time, the owner in fee simple; his heirs followed; and it cannot, as the defendant's counsel seems to suppose, be overcome by the subsequent possession of Eden and those who followed him, even though that were adverse, short of 25 years. It is, till that time, but possession against possession, and the one prior in time must prevail. *Whitney* v. *Wright* 15 *Wendell,* 171, is relied upon as showing that an abandonment by the prior possessor will destroy the force of the presumption in his favor; and no doubt he may so conduct himself as to neutralize the force of the presumption and turn it in favor of his successor, as my brother Bronson thought he had done in that case. Almost any presumption may be rebutted; but I am still at a loss for the circumstance in the case at bar, which can give application to the doctrine. I find no proof that Arnout Webbers or his successors ever doubted their title. I must deny that the negative fact of delaying a legal assertion of it can operate as an abandonment short of the time required by the statute of limitations Abandonment cannot be predicated of a prior possession till its force as evidence is gone; and that is the idea which the word is intended to express.

The difficulty of seeing that any thing like an answering adverse possession was made out, after the character of co-tenant with the plaintiff and his privies attached, is fully demonstrated by one of the books relied on in behalf of the defendant. *Walworth, chancellor,* in *Butler* v. *Phelps,* 17

*Wendell*, 642, 647. But it is contended that this long general [ \*226 ] psosession of a co-tenant from 1807, \*without any other evidence of an exclusive claim, should have been submitted to the jury as ground for presuming an ouster. That was done in *Doe, ex dem. Fishar*, v. *Prosser*, *Cowp*. 217, on such a possession for 36 years; and a verdict founded on the presumption was sustained. There had been a dead silence in the co-tenants out of actual possession for nearly forty years, which was held barely to raise a case for the jury. The time was nearly double that required by the statute of limitations. In the case at bar, there was a recognition of the tenancy in common in 1807. Indeed it then first arose; and the plaintiff entered and took possession by his agent Kinsey, in 1830, whom the defendant ousted; and as an answer to a suit by the defendant, under the revised statutes, in his own favor, the plaintiff brought this action some four or five years after. Intermediate 1807 and 1830, the single term allowed by the revised statutes as a bar by adverse possession, which began previous to 1830, had not elapsed; and only two or three years beyond that term when this suit was brought. *Hart* v. *Vose*, 19 *Wendell*, 365, did not relate to the claim of adverse possession by a tenant in common.

The case at bar comes entirely short of the protracted and exclusive possession in *Doe* v. *Prosser*, with the unbroken silence appearing in that case. The lapse of time was there very great, and the silence entirely unaccounted for. Here it barely exceeds twenty-five years; and there was at least one very decisive step towards a claim, an actual entry under claim of title within that time. I am not prepared to admit that the judge was bound, under such circumstances, to leave the question of a bar by adverse possession to the jury. The rule is laid down too broadly in the marginal note to *Jackson ex dem. Jadwin*, v. *Joy*, 9 *Johns. R.* 102. All the court say there, is, that the circumstances relied on to show an adverse possession were, in that case, proper for the jury. The note lays down the rule in the abstract, as if the question must be left to them whenever it is raised, however decisive the testimony. The book proves no more than the others cited by the counsel for the defendant: that where the question [ \*227 ] to be decided, \*whether it be adverse possession or any other, is left in serious doubt upon the circumstances proved, it belongs to the jury. *Benham* v. *Cary*, 11 *Wendell*, 83. *Read* v. *Hurd* 7 *id.* 408. *Chesapeake and Ohio Canal Co.* v. *Knapp*, 9 *Pet.* 567. It is equally clear that where the facts are plainly established, and to these the legal rules of presumptive evidence are obviously applicable, and raise an obvious result, the judge may tell the jury so, as he seems to have done in this case, without incurring the imputation of an attempt to transgress the line which divides his duty from theirs. The same remarks are, I think, applicable to what he said of Arnout Webbers' possession, and the objection that the ju-

ry should be put to pronounce on the question of its abandonment. I do not mean to say that the mere circumstance of Bakewell and Kinder taking, while in possession claiming under Eden, a quit-claim from the Webbers heirs was, *per se*, a conclusive admission of their ancestor's title. The act might have been explained, and rendered of such questionable import, as to raise a doubt for the jury to solve. *Jackson, ex dem. Vanderlyn*, v. *Newton*, 18 *Johns. R.* 355, 361. *Jackson, ex dem. Preston* v. *Smith*, 13 *Wendell*, 406, 413. But the total absence of any paper title in Eden, the prior possession of Webbers, the quit-claim character of the whole line of deeds through which Eden's title came down to the defendant, seem, when connected with the deed of 1807 to Bakewell and Kinder, to form a case against which a jury could hardly be allowed to find. By the simple act of taking title under you, I, in common presumption, admit your title. Here we have, not that act alone, and the presumption unrebutted but decidedly fortified by circumstances.

There were some points raised upon the admission of evidence which call for notice. The objection now made to the certificate of acknowledgment appended to the deeds of lease and release from John Webbers to Joel Northrop was not raised at the trial in its present form, and therefore cannot be noticed. At the trial, it was general that the execution of the deed was not well proved ; here it is, that the certificate omitted to assert knowledge or proof of the grantor's *identity. If there be any-  [ *228 ] thing in this, and it had been mentioned at the trial, farther proof might have been given. *Norman* v. *Wells*, 17 *Wendell*, 136, 142. I do not therefore stop to inquire whether, at that early day, the identifying clause was requisite.

An objection was made to the reading of Arnout Webber's will, on the ground that the plaintiff and those under whom he claimed not having been in possession, it could not be received as an ancient muniment of title. This was true when the will was offered, and I think the defect was not, in the respect mentioned, supplied by the subsequent evidence. The will purported to be a devise to the heirs at law in general terms ; and whatever may be said of the parties having a possession which might have been connected with the will we can no more impute it to that, than to the right of general inheritance. It is entirely equal, whether the claim and possession that followed was founded on one or the other. Why it should have been thought important, I am at a loss to conceive ; for the plaintiff's title was good without it, and seems to be based rather on inheritance than devise. As an act of ownership by Arnout Webbers, it is equally a *non sequitur*, for it asserts no title to the premises in question, nor could it be made so to speak without proof that the devisor had no other real estate ; whereas it was in proof that he had. However, though there was no possession by which the will could

be authenticated, within our own cases, one principle on which an ancient will is said to be received without formal proof, seems to be a presumption, after thirty years from its date, that all the subscribing witnesses are dead. That was said by Lord Tenterden, C. J. in *Doe, ex dem. Oldham,* v. *Wolley,* 8 *Barn. & Cres.* 22 ; and he certainly applied the presumption there very strongly ; for he received the deed without the ordinary proof, though the subscribing witness was alive and in court. Vaughn, B. laid down the same rule at the trial of the cause. 3 *Carr. & Payne,* 402, *S. C. nom. Doe, ex dem. Oldnall* v. *Deakin ;* 2 *Mann. & Ryl.* 195, *S. C.*

[ *229 ] But Lord Tenterden is not here reported so fully on the principle as he is in 8 *Barn. & Cress.* In the case at bar, time had *run from 1776, the date of the will. From that to the time of the trial was more than fifty years. I am of opinion the presumption clearly arose that all the attesting witnesses were dead ; and this fact always lets in secondary evidence of the execution. In secondary evidence there are usually no degrees. When the primary evidence is gone, you resort to what good fortune enables you to lay hold of as a substitute. This is often merely circumstantial. Thirty years' possession is with us one sufficient circumstance. A shorter time is allowed in England. 1 *Phil. Ev. by Cowen & Hill, p.* 503 *of the text, in connexion with note* 937, *at p.* 1357. In *Bradstreet* v. *Clarke,* 12 *Wendell,* 602, 677, this court held the producing a devise from the proper probate office, in England to be a material circumstance, though the will was not proved there. And in *Holton* v. *Lloyd,* 1 *Moll. Ch. R.* 30, 32, Chancellor Hart, on its being stated that a will was thirty years old, said, " The length of time, and its having come out of the proper office, (the prerogative office,) in my opinion are a sufficient foundation to entitle this will to be read." *And vid.* 1 *Phil. Ev.* 481, *text, ed. before cited, and id. note, p.* 1357. I am therefore of opinion, that both upon authority and the reason of the thing, the execution of the will in question was well made out by the secondary evidence. The original was produced from the proper office, with the registry of probate, in 1784. No improper reliance seems to have been placed upon the will as an act of ownership. I do not understand the judge in his charge to have mentioned it as proof of ownership. He alludes to it, but does not distinctly say for what purpose. That is perhaps the less material as there was quite sufficient proof of ownership without it.

It is impossible, however, to maintain that the declarations of Hannah Van Orden were admissible to affect the defendant. It is said she was one of his grantors, and so whatever she said of her ancestor's possesssion or ownership is receivable. That would be true, if her declaration had preceded her grant. But the latter was made in 1807, and her declaration not until 1812 or 1813. She was then a mere stranger. It is entirely settled [ *230 ] that a grantor's declarations *after he has parted with his title,

are not admissible to affect his grantee. *See the cases cited in Cowen & Hill's Notes to* 1 *Phil. p.* 655. Indeed a contrary rule would be intolerable on principle. Were this, therefore, a question made by bill of exceptions, we should be bound to grant a new trial. Coming, however, on the *case*, we have a discretion. The declaration seems to have been hastily received and could not have been much relied upon. The case, especially as to ownership, the point to which the improper evidence related, was entirely sustained without it. True, the declaration was received while the cause, in that respect, stood very weak. But in the progress of the trial it became so clear on other evidence, that I think the learned judge was fully warranted in assuming it as proved. It must be entirely useless to send the cause down to another trial, for the sake of avoiding testimony improperly received, when we cannot but see that the verdict should be the same without it. *Graham on New Tr.* 246 to 252, *and cases there cited.*

New trial denied.