Elbert, C. J.
This is an information in the nature of a quo warranto, and is submitted on demurrer to the petition. The controversy arises under an act passed by the last general assembly creating and establishing a criminal court in Lake county.
Warrant for the act is found in Sec. 24, Art. VI, of thé constitution: “The general assembly shall have power to create and establish a criminal court in each county having a population exceeding fifteen thousand, which court may have concurrent jurisdiction with the district court in all criminal cases not capital; the terms of such courts to be as provided by law.”
The first section of the act establishes in the county of Lake a criminal court, to be called “the criminal court of Lake county.”
The second section provides, that “The judge of said court shall possess the qualifications prescribed by law for judges of the district court; that he shall be appointed by the governor, by and with the consent and advice of the senate; also, that all vacancies occurring during the recess of the senate may be filled by appointment by the governor.”
The act was approved March 4, 1881, after the adjournment of the assembly. On the same day the governor appointed Henry A. Day judge of the court, who qualified upon the 5th of March. Thereafter, and on the 7th of March, the county commissioners of Lake county appointed A. W. Rucker, the respondent, judge of said court, who also qualified.
To the petition showing these facts, two grounds of demurrer are stated:
First—That, under the constitution and laws of the state, the appointment of criminal judge by the governor was null and void.
Second—That under and by virtue of the constitution and laws of the state, the board of county commissioners of the *347 county of Lake had full power and authority to appoint defendT ant to said office.
This calls in question the constitutionality of the act of the general assembly, which, the respondent claims, violates two distinct and separate constitutional provisions, to wit: Sec. 29, Art. VI (as amended), and Sec. 9, Art. XIV. They will be given in full when we come to consider them.
Before entering into the inquiry as to the constitutionality of the act in question, a recurrence to, and clear understanding of, two leading propositions will aid in clearing the way to correct conclusions.
(1) Touching the powers of the general assembly, it must be remembered that, when the people, by their constitution, created that body, and declared that the legislative power should be vested therein, they conferred the full and complete power as it existed and rested in themselves, subject only to the restraints and limitations of their own constitution and the constitution of the United States Cooley Con. Lim., 87.
Chief Justice Denio says: “The people, in framing the constitution, committed to the legislature the whole law-making power of the state, which they did not expressly or impliedly withhold. Plenary powers in the legislature for 'all purposes of civil government is the rule. A prohibition to exercise a particular power is an exception. In inquiring, therefore, whether a particular statute is constitutional, it is for those who question its validity to show that it is forbidden. I do not mean that the power must be expressly inhibited. ***** Every positive direction contains an implication against everything contrary to it, or which would frustrate or disappoint the purpose of the provision, the frame of the government, the grant of legislative power itself, the organization of the executive authority, the erection of the principal courts of justice, create implied limitation upon the law-making authority as strong as though a negative was expressed in each instance; but, independently of these restraints, expressed or implied, every subject within the scope of civil government is liable to be dealt with by the legislature.” People v. Draper, 15 N. Y., 543.
(2) Touching the relation which the judicial department sus-taines to the legislative, it must be remembered that they are coordinate departments of the government of equal dignity. Each *348 is alike superior in the exercise of its proper function. “ If an act of the legislature is held void, it is .not because the judges have any control over the legislative power, but because the act is forbidden by the constitution, and the constitution must be enforced as the paramount law.” (Cooley Con. Lim., 160.) It is nevertheless apparent in such a case that the decision of a co-ordinate department is indirectly overruled. Accordingly courts have uniformly held that while the duty in a proper case cannot be declined, the power is to be exercised with caution and reluctance.
Mr. Sedgewick thus states the doctrine: “ The leading rule in regard to the judicial construction of constitutional provisions is a wise and sound one, which declares that in cases of .doubt, every possible presumption and intendment will be made in favor of the constitutionality of the act in question, and that the courts will only interfere in case of clear and unquestioned violation of the fundamental law. It has been repeatedly said that the presumption is that every state statute, the objects and provisions of which are among the acknowledged powers of legislation, is valid and constitutional, and such presumption is not to be overcome unless the contrary is clearly demonstrated.” Sedgewick Stat. and Con. Law, 409.
These well-settled propositions of legislative power and judicial practice will be found to simplify the inquiry as we advance.
Counsel for the respondent, in their argument, challenge the constitutionality of the act in question upon two grounds: (1.) That under the constitution the office of criminal judge must be elective, not appointive. (2.) That in either case the power to fill vacancies in the office could not be vested in the executive, as by the terms of the constitution it is vested in the board of county commissioners.
It would, perhaps, be sufficient for the purposes of this case to determine the last point only. In view, however, of the public interest, as well as the interests of the parties, we consider both. Less than this might result in the necessity for another action.
Whether judicial positions should be filled by election or appointment, has long been a matter of much controversy. It is a question upon which great contrariety of opinion exists, and upon each side of which the ablest pens have been employed.
*349 It would be difficult to believe that any convention of delegates convened for the purpose of framing a constitution for a new state would adopt either the elective or appointive system without a contest. Any adoption of one or the other system could scarcely be casual or accidental, but the result of deliberation and debate.
In this view counsel for the respondents presented a most able and ingenious argument to the effect that there is sufficient in the constitution to justify the inference of a declaration by the people in favor of an exclusively elective judiciary.
To ascertain the will of the people in respect to their judiciary, we turn to that subdivision of their constitution. There, if anywhere, it is fair to expect to find it declared.
It is not contended that there is any provision in express terms declaring all judicial officers elective.
Judges of the Supreme Court, judges of the district courts, judges of the county courts, district attorneys and justices of the peace are all made elective in express terms, but here the constitution ceases to speak upon the subject. Criminal courts and police magistrates are provided for, but whether they are to be elected or appointed the constitution does not say, unless by implication.
The last clause in section 29 of this article is as follows: “Judges of the Supreme, district and county courts appointed under the provisions of this section, to fill vacancies, shall hold office until the next general election, and until their successors elected thereat shall be duly qualified.”
Had the constitution failed to provide elsewhere for the election or appointment of the supreme, district and county judges, there would have been found in the language of this provision concerning vacancies a necessary implication that they were to be elected. It would be a necessary implication, because the constitutional provision could only be operative by their being elected.
If the term “county courts,” as used in this provision, is to be regarded as a general term including the criminal court as well as the county court, so-called, then this implication attaches to it, and it must be held as an elective office. We are satisfied, however, that the term “county court” as here used, was not intended to designate or include the criminal court. The criminal *350 court may be in a certain sense a county court, but such is not its constitutional name.
Sections 22 and 23 of this article establish county courts; provide for the electiorl of a county judge in each county, who shall be judge of the county court; declare them courts of record, and prescribe their jurisdiction under this distinctive name, title and designation. This distinguishes it as “the county court” of the constitution, and fixes with certainty the courts intended in the 29th section. Having a distinct meaning and designating a distinct court in sections 22 and 23, we cannot by any rule of interpretation assign it another meaning and make it include another court in section 29.
Counsel for respondent cite section 9, article XIV, in support of their proposition.
This article is entitled “ counties,” provides for the removal of county seats, the establishment of new courts, the election of county commissioners, clerk and recorder, sheriff, coroner, treasurer, superintendent of schools, county surveyor and assessor. It concerns officers which are peculiarly county officers by reason of their connection with and administration of county affairs. Far removed from the article concerning “ the judiciary,” in section 9, of an article concerning “ counties,” concealed under the general term “county offices,” counsel for the respondent discover the criminal court, and that it is elective. The rule that we stated at starting, “ lays its axe at the roots ” of this argument. Any implication that could be justly drawn from this article falls far short of that clear and necessary implication de-ded by the rule. So, too, any implication drawn from what counsel call the “whole spirit of the constitution,” falls far short of the same imperative requirement.
It has been decided that courts are not at liberty to declare an act void, because in their opinion it is opposed to a spirit supposed to pervade the constitution, but not expressed in words. People v. Fisher, 24 Wend., 220; State v. Staten, 6 Cald., 233; Cooley’s Con. Lim., 171.
After a careful examination, we are unable to find either express terms or necessary implication to support the proposition that all judicial officers are to be elected. Both of these essentials are wanting; and in the absence of constitutional restraint under the rule laid down,,the power of the general assembly was *351 plenary, to declare the office of criminal judge either elective or appointive at their discretion. In this respect the act in question is free from constitutional objection.
In respect to the second objection made to the act, I do not understand counsel to question the power of the general assembly to vest in the governor authority, with the advice and consent of the senate, to fill the office of criminal judge originally. The question made involves alone the power to fill vacancies during the recess of the senate.
The act provides that “ the governor shall, immediately after this act takes effect, appoint, with the advice and consent of the senate, a person possessing the necessary qualifications as judge of said court, and all vacancies in said office shall be filled in the same manner; provided, that all vacancies occurring during the recess of the senate, may be filled by appointment by the governor, but such appointment shall expire at the end of the next session of the senate.”
Section 29, article VI, of the constitution provides that “vacancies occurring in any of the offices provided for in this article, shall be filled by appointment, as follows: Of judges of the Supreme and district courts, by the governor; of district attorneys, by the judge of the court of the district for which such attorney was elected; and of all other judicial officers by the board of county commissioners of the county wherein the vacancy occurs.”
Two questions arise: first, is the office of criminal judge provided for in the preceding sections of article VI? Second, was there a vacancy in the office at the date of the respective appointments by the governor and county commissioners?
Both points are contested.
By preceding sections of article VI, supreme, district and county courts are created and established. They became existing courts upon the adoption of the constitution, with defined jurisdiction and power. Section 24 of the article declares that “the general assembly shall have power to create and establish a criminal court,” eftc. Because the power to create and establish a criminal court is vested in the general assembly instead of being created and established by the article, as are the other courts, it is contended that it is not “provided for.”
The words of the constitution must be taken in their ordinary and general acceptation, and it would be difficult to say that this *352 section, in every plain and natural use of the phrase, did not provide for a criminal court.
We are asked to say that “provided for” means created or established, and that it includes only the courts created and established by the article. This would be substitution, not interpretation.
Upon examination, however, we find that the section interprets itself in this respect.
The first paragraph of the section declares in the same language that “all officers provided for in this article, excepting judges of the Supreme Court, shall respectively reside in the district, county, precinct, city or town for which they may be elected or appointed.” It follows that the framers of this article regarded city and town officers as provided for by this article, otherwise, they would not have declared where they should reside.
But an examination discloses that they are provided for in the same manner as the criminal courts, by a declaration that “the general assembly shall have power to provide,” etc. Sec. 26, article VI.
The section thus incidentally, clearly declares the sense in which its framers used the disputed words. We must accordingly hold that the office of criminal judge comes within the provisions of the section.
Turning to the second point it will be found that the legal force of the term “vacancy” has been the subject of adjudications. Upon the point, whether there can be a vacancy before there has been an incumbent, the general doctrine appears to be that the term may apply to an existing office without an incumbent, although it has never before been filled. In the case of Stocking v. The State, 7 Ind., 326, the courts say: “The vacancy followed as a natural consequence of their (the general assembly) doing what they had a right to do—to create a new circuit. There is no technical nor peculiar meaning to the word vacant as used in the constitution. It means empty, unoccupied, as applied to an office without an incumbent. There is no basis for the distinction urged, that it applies only to offices vacated by death, resignation, or otherwise. An existing office without an incumbent, is vacant, whether it be a new or an old one. A new house is as vacant as one tenanted for years which was abandoned yesterday. We must take the words in their plain, usual sense.”
*353 In Walsh v. Commonwealth, 89 Penn. St., 419, the courts say: “The result is that the word ‘vacancy’ aptly and fitly describes the condition of an office where it is first created and has been filled by no incumbent. The need to strain and torture terms would lie in the opposite direction.”
To the same effect are Clark No. -, 5 Nev., 111; State ex rel. v. County Court, 50 Mo., 317; State v. Barcker, 56 Mo., 7; Dillon Corp., 161; 33 Am. Rep., 777. There is some conflict of authority, but this appears to be the general and better doctrine.
A distinction, however, must be taken between the power to fill an office originally, and the power to fill a vacancy. The People, ex rel. v. Langdon, 8 Cal., 3. When a new office is created, a vacancy does not necessarily occur.
It was entirely competent for the general assembly to create and establish a criminal court, and provide that the judge thereof should be appointed by the governor, immediately or within a fixed time. Against this there is no constitutional inhibition. In such case, until the expiration of the time within which the executive was to exercise the appointing power, there would be no vacancy. Upon the expiration of the time fixed without action, a vacancy would immediately occur by reason of the failure to act. Under the act in question the appointment was to be made “immediately after the act took effect, and with the advice and consent of the senate.” Immediately, would mean within a reasonable time, having reference to the act to be done. The “advice and consent of the senate” being necessary, the hour of the adjournment of that body would mark the extreme limit of time within which the appointment was to be made. Had the act been signed prior to the adjournment, and no appointment made, immediately upon adjournment there would have been a vacancy, by reason of the failure of the appointing power to exercise it. In this case, the bill not having been signed until after the adjournment, the governor was unable to act under the provision for filling the office “with the advice and consent of the senate.” Upon approval the act took effect immediately; the time within which the executive was required to appoint had expired, and inability to act was followed by a vacancy, the same as in case of a failure to act.
There being a vacancy, and the office being judicial, all the conditions concurred that were necessary to make the 29th section *354 of article VI of the constitution applicable, and it provided that the vacancy should be filled by the county commissioners of the county where the vacancy occurred. In so far as the act of assembly provides that vacancies in the office of judge of the criminal court of the county of Lake are to be filled by the governor,' it is in conflict with the provisions of the constitution, and the constitution must be enforced as the paramount law.
Clinto7i Reed, Weston and Bissell, attorneys for relator.
Thomas, Rice and Johnson, attorneys for respondent.
While this is true, the entire act does not necessarily fail.
“Where a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning, that it cannot be presumed the legislature would have passed the one without the other. The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separate, so that the first may stand though the last fall. The point is not whether they are contained in the same section, for the distribution into sections is purely artificial, but whether they are essentially and inseparably connected in substance. If when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being enforced in accordance with the apparent legislative intent, wholly independent of that which is rejected, it will be sustained.” Cooley’s Con. Lim., 178.
The general assembly had full power to create and establish the criminal court; to provide that the judge thereof should be appointed by the governor, with the advice and consent of the senate; to fix his term at two years; and to provide that the term of the incumbent appointed to fill a vacancy should expire at the end of the next session of the senate.
These can all be treated as separate and independent provisions, and remain unaffected by this decision.
That portion of the act deemed unconstitutional is fully supplied by the constitution, and with this exception, the act can be enforced in accordance with the legislative intent.
The demurrer is sustained, and judgment entered for the respondent.