[No. 5031.]

[No. 2586 C. A.]

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA v. HUMMER.

1. **Statutes—Presumptions.**

An act of the legislature is presumed to be valid, and he who asserts its unconstitutionality must point out some specific provision of the constitution which expressly, or by necessary implication, prohibits it.—P. 212.

2. **Constitutional Law.**

The principle of construction applicable to the federal constitution cannot always be applied to a state constitution, as the former is an instrument of grants, and the latter is one of limitations, of power.—P. 213.

3. **Statutes—Judges—Constitutional Law.**

Sess. Laws 1899, c. 91, p. 171, authorizing county judges to interchange with each other, is not unconstitutional by implication, on the ground that article 6, §12, of our constitution expressly declares that judges of the district court may hold court for each other, while §22 of the same article, relating to county courts, is silent upon this subject; for, by such omission, there is no intention shown to limit the power of the general assembly in authorizing the interchange of county judges, and such legislation is constitutional.—P. 213.

4. **Same—Evidence—Rebuttal—Waiver.**

In an action on a life insurance policy brought after the expiration of the time allowed in a limitation clause therein, evidence upon the part of plaintiff to the effect that the local agent represented to her that the company would probably pay the claim and that a proposition was then pending, is admissible for the purpose of showing the reason for not bringing the action sooner; and the admission of testimony given by plaintiff's counsel in rebuttal, in regard to a conversation with such agent, which tended to show a waiver, the latter not testifying, was not abuse of discretion; nor was the evidence of plaintiff inadmissible, which went to show the expense she had incurred by furnishing additional proof of death demanded by the company after it was in possession of proofs showing that the insured died of consumption, for such evidence tended to show the waiver by defendant of a warranty claim as to health of insured.—P. 217.

5. **Same—Evidence—Contradiction.**

In an action on a life insurance policy, plaintiff may contradict written answers made over her signature in the proofs of death, such answers being inserted by agent who solicited such proofs of her, after testifying that she did not make such statements or read the same or know they were contained therein.—P. 218.

6. **Same—Application—Warranties.**

Where an insurance policy recites that it was issued in consideration of the application which is made a part of the contract, statements in the application, which were followed by a declaration and warranty that such statements were complete and true, were warranties forming a part of the contract of insurance, and, if such statements were not literally true when made, the policy was voidable at the election of the company.—P. 220.

14

*Appeal from the County Court of Arapahoe County.
Hon. R. D. McLeod, Judge.*

Action by Carrie Hummer against The Pruden-
tial Insurance Company of America.   From a judg-
ment for plaintiff, defendant appeals.

Decision *en banc.*                    *Reversed.*

Messrs. Benedict & Phelps, for appellant.

Mr. Charles Brice, for appellee.

Mr. James C. Starkweather, *amicus curiae.*

Mr. Justice Campbell delivered the opinion of
the court:

Action by appellee, as assignee or beneficiary,
upon a policy of insurance issued by the appellant
insurance company on the life of Joseph Stern. From
a judgment for the plaintiff, the defendant has ap-
pealed.   As the action was begun before a justice of
the peace, there were no written pleadings.   The
nature of the controversy and the questions for deter-
mination are, however, indicated by the defenses re-
lied upon below to defeat the action, and here to
reverse the judgment, and they may be stated under
the following heads: (1) That the judge who presided
at the trial was not the county judge of the county
court of Arapahoe county, in which the cause was
pending, but the judge of the county court of Lake
county, and therefore was without jurisdiction to sit,
hear or determine the action; (2) the action was not
brought within six months from the death of the
insured, as the contract of insurance required; (3)
the trial court erred in admitting, over defendant's
objections, testimony offered by the plaintiff, and
committed further error in the giving of instructions
against defendant's objections, and refusing instruc-
tions requested by it; (4) the insured warranted that
he was in good health at the time he applied for

insurance, and that he had never been seriously ill, whereas both statements were false.

1.   The constitutional question raised does not affect the merits of plaintiff's cause of action, but goes only to the point that there was no jurisdiction in the court, presided over by one not the duly elected judge thereof, to hear and determine the cause. The resolution of this constitutional question is not absolutely necessary to a decision of the present appeal, for, as will appear later in the opinion, the appeal is sustained because of the erroneous ruling of the trial court in construing the contract of insurance. But as we gather from the record, and are so advised by counsel, the volume of business in the former county court of Arapahoe county, now of the city and county of Denver, is so great that for many years it has been the uniform custom of its presiding judge to call in the judge of the county court of some other county to assist in the trial of causes, and as the business of that court is constantly increasing such will be the future practice. So that probably the same situation will again be presented upon another trial, and some other, than the duly elected, judge of the county court will be likely to preside thereat. It therefore comports with good practice now to determine the constitutional question, because it may, and likely will, arise at another trial; hence its determination is, or may be, necessary to a decision of the case.

The trial was had before Hon. R. D. McLeod, who then was the county judge of Lake county, Colorado. Hon. Ben B. Lindsey was the duly qualified and acting county judge of Arapahoe county, now the city and county of Denver. At the request of Judge Lindsey, Judge McLeod held the term of court under the authority of an act of the general assembly approved March 4, 1899 (Session Laws 1899, p. 171), which reads: "That the county judges of the several

counties of this state, with like privileges as the judges of the district courts of this state, may interchange with each other, hold court for each other, and perform each others' duties, when they find it necessary or convenient." The district courts of this state have similar powers under the constitution, as well as by statute.

But appellant says this statute is void. A fundamental rule of construction is that every legislative act of the legislative department of government is presumed to be valid. It is incumbent, therefore, upon one who asserts its unconstitutionality to point out some specific provision of the constitution which prohibits it. The prohibition must be either express or one that necessarily or exclusively arises by implication from some express prohibition. To this proposition we need only cite an early case in this court where the subject is exhaustively considered. —*People v. Rucker*, 5 Colo. 455.

Recognizing this rule, appellant, though conceding that this statute, under which the interchange of judges took place, is not prohibited by any express provision of the constitution, contends, nevertheless, that out of an express provision therein there arises by a necessary and exclusive implication a limitation upon the power of the general assembly to enact it. The argument is that since section 12 of article 6 of the constitution contains an express declaration that the judges of the district courts may hold court for each other, and shall do so when required by law, and in section 22, relating to county courts, no such privilege is given or duty imposed, upon the principle that the expression of one thing is the exclusion of another, it necessarily follows that there can be no interchange of county judges.

We cannot give our sanction to this reasoning. If the constitution were entirely silent upon the sub-

ject, there is no question that, since the legislative
functions of the law-making body are plenary, in the
absence of a limitation found in the federal or state
constitution, the act authorizing county judges to in-
terchange would be valid. The principle, upon which
it is said the present limitation exists, is not fully
applicable in construing a state, as distinguished
from a federal, constitution. The latter is an instru-
ment of grants, the former one of limitations, of
power. Merely because in the section relating to
district courts the power of interchange is given, and
the section applicable to county courts is silent, it is
neither a logical nor a necessary deduction that the
legislature cannot confer upon county judges the
right of interchange. In permitting judges of dis-
trict courts to hold court for each other at their
pleasure, and compelling them to do so when required
by the general assembly, section 12 prevented the
general assembly, in the one instance, from abolishing
a judicial privilege, and, in the other, made impera-
tive, and not discretionary, the duty of district judges
to interchange when the legislature required it. It
contains, in one sentence, a grant of a right, or privi-
lege, to district judges, and a corresponding implied
limitation upon the general assembly, which disables
that body from taking away the thing granted. In
another sentence, there is a grant of power to the
general assembly, which in the absence of the grant
that body would possess, and, in connection with this
grant, is imposed a duty on the judges, when the
granted power is exercised by the general assembly,
to yield obedience thereto, instead of following the
discretion they would otherwise have. But in omit-
ting similar provisions in section 22, there was no
intention, by way of implication, to limit the power
of the general assembly in providing for interchange
of county judges.

The supreme court of Illinois has held that provision for such interchange both by the circuit and county judges was within the power of the legislature to make, but in that state the constitution is silent, with respect both to circuit and county judges, hence their decisions are not squarely in point under our constitution.—*Pike v. City of Chicago*, 155 Ill. 658; *Jones v. Albee*, 70 Ill. 34; *Wells v. People*, 156 Ill. 616; *Wisner v. People*, 156 Ill. 180.

The case nearest in principle in our own reports is *Jeffries v. Harrington*, 11 Colo. 191. Section 2 of article 6 of our constitution confers upon the supreme court appellate jurisdiction, and in section 11 the general assembly is authorized to confer appellate jurisdiction upon district courts. No appellate jurisdiction is provided for in the constitution for county courts. Our general assembly passed an act conferring appellate jurisdiction upon county courts, and it was contended in the Jeffries case that the act was void because, by virtue of the provisions of sections 2 and 11, there was an implied limitation upon the general assembly preventing it from conferring such power on county courts. But it was held that, under the provisions of section 23 of the same article relating to county courts, whereby they shall have original jurisdiction in certain matters "and such other civil and criminal jurisdiction as may be conferred by law," appellate jurisdiction might be granted under the quoted clause. While this case is not exactly in point, still we think that the decision might well have been based, not only upon section 23, but also upon the proposition that the state constitution, being one of limitation and not of grant, there was no express prohibition, and none arising by necessary implication from any express prohibition, against the power to pass the statute in question. And if "such other civil * * * jurisdiction," etc., permits a grant of

appellate jurisdiction upon county courts, it will also, without any strained construction, justify the conferring upon their judges the right of interchange.

In *Parks v. S. & S. Home,* 22 Colo. 86-94, it was held that the maxim *"expressio unius exclusio alterius"* did not operate to exclude from the executive department of the state certain public officers who do not belong to the legislative or judicial department, even though such officers are not named in section 1 of article 4 of our constitution, which reads: "The executive department shall consist of" certain designated officers. The principle of that decision applies to the present case, for, if certain public officers, neither legislative nor judicial in character, are executive officers, though not named in the section of the constitution declaring what officers belong to the executive department, it certainly was competent for the general assembly to provide for an interchange of judges of county courts, though the constitution is silent upon that subject, while it expressly permits such interchange by judges of the district court.

In re Compensation of County Judges, 18 Colo. 272, it was said that under the constitutional provision requiring the legislature to classify counties for the purpose of providing compensation for county officers, the county judge was, in the sense of that provision, a county officer. That is of no material moment in this case, for in *Fletcher et al. v. Stowell,* 17 Colo. 94, the court held that, "No territorial limit is fixed by the constitution to the civil jurisdiction either of the district courts or of the county courts." If that be true, then the mere fact that the county judge is a county officer would be, in the absence of the constitutional grant of power, from a constitutional standpoint, no greater objection to the interchange by judges of county courts than it is to such

arrangements by district judges, for district judges are, in the same sense, district officers, though in a more important sense they are state officers. This court has repeatedly sustained the validity of our statute permitting these exchanges by district officers. —*Jordan v. People,* 19 Colo. 417; *Bigcraft v. People,* 30 Colo. 298.

2. In the contract of insurance is this clause: "No suit on this policy shall be maintainable against the company unless brought within six months next after the date of death of the insured." This action was not brought within the prescribed time. The facts are that the company, through its authorized agents, undertook to furnish its own proofs of death, and in so doing required, among other things, an affidavit of plaintiff, who claimed to be the assignee or beneficiary of the policy, showing her right to its benefits. This certificate, and the policy, which had previously been delivered by insured to plaintiff, were turned over to defendant's local superintendent in Denver, and by him transmitted to the home office in Newark, N. J. A proposition of compromise made by the plaintiff had been, through the local superintendent, sent to the home office where it was held under consideration for some time and finally rejected, notice of which was given to plaintiff, and the policy returned to her, but not until after the expiration of the six months' period of limitation. The court properly instructed the jury that this limitation was binding upon the plaintiff, unless waived by defendant, but if they believed from the evidence that it had been waived by the president or vice-president or secretary of the company, who were the officers which the policy itself declared had the power to vary its terms, or if the jury believed from the evidence that the company, by its own action, put it out of the power of plaintiff to comply with the limita-

tion, or if negotiations for a settlement were carried on between plaintiff and defendant and the same consumed the six months of limitation, and defendant induced plaintiff to believe that by such negotiations a settlement might be effected, and, relying upon the same, plaintiff did not bring her action in time, defendant would be estopped to insist upon such failure. There was no error in this instruction, and the evidence abundantly warranted it. Indeed, under the uncontradicted evidence that a compromise was pending between the parties, and that defendant, without intimating to plaintiff that it would insist upon the limitation, did not reject the terms of the proposed settlement and did not return the policy of insurance until after such time had elapsed, the court might well have instructed the jury that, as a matter of law, the limitation was waived.—*Farmers A. M. F. I. Co. v. Trombly,* 17 Colo. App. 513 ; *Dougherty v. Met. L. Ins. Co.,* 38 N. Y. Supp. 258 ; *Steel v. Phenix Ins. Co.,* 51 Fed Rep. 715 ; *Killop v. Putnam Ins. Co.,* 28 Wis. 482.

3. We do not find prejudicial error in the ruling of the court permitting plaintiff to answer a question as to what the local assistant superintendent said to her about the company paying the policy. The objection to the question is based upon the proposition that the agent, being a mere local agent, could not bind the company by any admission, or waive any condition of the policy, and the *U. S. Mut. A. A. of N. Y. v. Kittenring,* 22 Colo. 257, is cited thereto. This case is not in point. The question and the answer were both proper, if for no other reason, because they bear upon the claim of plaintiff that she did not sooner bring her suit because the representation was, as she testified, made to her by the local superintendent that the company would probably pay the claim, and a proposition for compromise was pending.

Admitting on rebuttal testimony of plaintiff's counsel as to a conversation with defendant's superintendent, who had not testified, was not error. It related to facts from which a waiver might be implied. Possibly it should have been elicited when plaintiff was making her case in chief, but the court did not abuse its discretion in receiving it on rebuttal.

Neither was there error in allowing plaintiff to show that she had been at an expense of ten dollars in furnishing further proof demanded by the defendant through its agents, after it was in possession of proofs showing that insured had died of consumption. The evidence was legitimate for the purpose of showing the conduct of defendant company from which a purpose to waive the warranty as to health might be implied, since, if defendant intended to insist on its right to avoid liability on the policy because of a breach of warranty, it was wrong, as well as inconsistent with its intention to avail itself of its undoubted right in that respect, which nevertheless it could waive, to put plaintiff to useless costs.

4. The plaintiff was permitted to contradict answers purporting to have been made over her signature in what is denominated "Claimant's Certificate," which was a part of the proofs of death taken by the defendant's agents. In this certificate she was made to say that the insured died of "consumption," and that his health was first affected about two years before his death. The certificate was produced, and the plaintiff acknowledged that she signed it, but emphatically declared that she did not make such statements or read the answers to the questions, or know that such answers were inserted, that they were falsely written therein by an agent of the company who, at the time, was defendant's local superintendent, or his assistant. The certificate shows that the answers were not written by the plaintiff. Defendant,

however, insists that she cannot be permitted to deny anything contained in the certificate, and cites *Sun Fire Office v. Wich,* 6 Colo. App. 103; *New York Life Ins. Co. v. Fletcher,* 117 U. S. 519. These cases are not in point. The latter case decides that where an agent of a company, without the knowledge of the applicant, wrote down false answers in the application for insurance, and concealed the truth, and where these were signed by the applicant without reading, and by the agent transmitted to the company, and the company assumed the risk on the basis of the statements, and where it was conditioned in the policy itself that these answers were a part of it, and that no statement to the agent not thus transmitted should be binding upon his principal, and where a copy of the application with these directions conspicuously printed upon it accompanied the policy—the applicant who signed without reading was presumed to know the contents, and was bound by his answers.

That is not the case we are considering. This certificate is not an application for insurance. Here the company, through its agent, undertook to furnish its own proofs of death, and applied to the plaintiff for a statement. She did not voluntarily offer it, but was solicited by the company to make it. The agent who wrote these answers was the agent of, and acting for, the company, and if he made false statements therein, as the plaintiff testified he did, she is not bound thereby, but was properly permitted by the court to state the facts. The superintendent knew that the plaintiff did not know, and she testified that she did not know, the cause of the death of the insured; she was in Denver, Colo., when he died at Albuquerque, N. M., and did not know of the death for several months thereafter, and was not aware that his health was affected at the time, or before the date, of the issuance of the policy. We do not find any

prejudicial error by the court in its rulings on this testimony.

The judgment, however, we are compelled to reverse because of an error of the court in instructing the jury as to the meaning of the contract or policy of insurance. The policy begins: "In consideration of the Application for this Policy, which is hereby made part of this Contract, * * * The Prudential Insurance Company of America agrees to pay * * * unto the executors, administrators or assigns of the person named as the Insured * * * the amount of benefit," etc. The application was not annexed to, or copied into, the policy, but was referred to, as the foregoing excerpt shows. The application consists of one printed and written sheet and page. It is headed "Application for Insurance." Following this heading are 19 printed questions with appropriate blanks after each question for an answer thereto. Immediately following the last answer is this clause: "I hereby apply for insurance for the amount herein named, and I declare and warrant that the answers to the above questions are complete and true, and were written opposite the respective questions by me, or strictly in accordance with my directions. I agree that said answers, with this declaration, shall form the basis of a contract of insurance between me and The Prudential Insurance Company of America." Then followed insured's signature. It will thus be seen that the application consists of the questions and answers thereto and the foregoing declaration to which the signature of the applicant is affixed. It is one entire instrument. In the declaration the insured warrants the answers to the questions to be complete and true, and that the answers, together with his declaration, shall form the basis of the contract. They constitute the application. The policy itself expressly declares that the application

for the policy is made a part of the contract. These answers and warranties of their truth are part of the application, and therefore they are incorporated into, and become a part of, the contract. If, therefore, they were not literally true when made, the policy was voidable at the election of the company.

The trial court told the jury that the answers to the questions contained in the application were not warranties of their truth; but, on the contrary, instructed them that, if they were substantially true upon matters material to the risk at the time they were made, then the requirements of the law in that respect are satisfied. The trial court was clearly wrong. An authority, directly in point, that the answers were warranties and became incorporated into, and formed a part of, the contract of insurance, is *Webb v. Bankers' L. I. Co.*, 19 Colo. App. 456.

We do not find any other questions argued that call for consideration. Because of the error of the court in its instruction on the subject of warranty, the judgment must be reversed and the cause remanded for a new trial upon the sole issue as to whether or not the answers of the insured in the application with respect to the condition of his health were, or were not, true; and, if not true, whether the company, by estoppel or waiver, can now rely on their falsity to escape liability. The other issues of fact have been rightly determined in favor of the plaintiff, and should not be retried.     *Reversed.*

Decision *en banc*.