**HOME INDEMNITY COMPANY,**
Appellant,

v.

**MIDWEST AUTO AUCTION, INC.,**
Appellee.

No. 6466.

United States Court of Appeals
Tenth Circuit.

Dec. 24, 1960.

Paul D. Renner, Denver, Colo., for appellant.

Fred M. Winner, and Harry M. Williams, Denver, Colo., for appellee.

Before MURRAH, Chief Judge, LEWIS, Circuit Judge, and RICE, District Judge.

RICE, District Judge.

Midwest Auto Auction, Inc., formerly known as Jack Layton's Auto Auction, Inc., plaintiff in the trial court, sought to recover the sum of $6,297.63 on an employees' indemnity bond admittedly executed by The Home Indemnity Company in favor of the plaintiff. Plaintiff alleges certain losses occurred and were caused "by the fraud or dishonesty" of its employees. Parties hereafter will be referred to as plaintiff and defendant, as they appeared in the trial court.

The express purpose of the defendant's bond was to indemnify plaintiff "against any loss of money or property, real or personal *(including that part of any inventory shortage which the insured shall conclusively prove has been caused by the fraud or dishonesty of any Employee or Employees)* (Emphasis supplied) belonging to the Insured, or in which the Insured has a pecuniary interest, or for which the Insured is legally liable, or held by the Insured in any capacity whether the Insured is legally liable therefor or not, which the Insured shall sustain * * * through any fraudulent or dishonest act or acts committed by any one or more of the Employees * * *"

Another provision of the bond, Section 12, is as follows: "This bond shall be deemed canceled as to any Employee: (a) immediately upon discovery by the Insured, or by any partner or officer thereof not in collusion with such Employee, of any fraudulent or dishonest act on the part of such Employee; * * *"

Plaintiff, under the name of Jack Layton's Auto Auction Company, commenced business in the State of Colorado on or about December, 1955, and continued until the close of the working day June 21, 1956. At all times material, Jack Layton was manager and president of the corporation but was not a stockholder. Layton was experienced in the auto auction business and bore a good reputation for honesty and fair dealings. The directors and stockholders of the plaintiff company had no prior experience in the auction business, and they relied upon Layton and gave to him full powers of management of the business. He was employed at a salary of $500 for the month of December, and $1,000 per month thereafter. There was no definite agree-

ment as to the dates on which the salary should be paid.

Four separate and distinct losses did occur. Because of the issues presented by the defendant, the first loss requires special consideration. On June 5, 1956, the auditor of the auction company discovered that in January and February, 1956, Layton had drawn over and above his stipulated salary the sum of $1,000. At a meeting on June 9, 1956, attended by the auditor, two principal directors and stockholders of the corporation, and Layton, this matter was discussed. As a result of this meeting, the directors of the company accepted the explanation of Layton which was to the effect that the overdrawing of his salary account was a mistake and/or inadvertence on his part. Layton agreed to return the $1,000. Prior to this incident, there had been no questionable practices in the management of the company. The result was that the directors were convinced that Layton had not been guilty of any fraud or dishonesty, and Layton was continued in full management and control of the business. No notice concerning the overdrawn salary was given the defendant bonding company.

The trial court, after hearing testimony substantially as stated above, found that the overpayment of salary to Layton might have been the result of negligence or mistake and that it had not been established by a preponderance of the evidence that the overpayment of salary resulted from fraud or dishonesty on the part of Layton or from fraud or dishonesty on the part of anyone. Consistent with this finding, the court denied recovery on the claim based on the overdrawn salary item.

Notwithstanding the fact that the trial court denied recovery on the salary item, the defendant challenges the court's finding of fact in regard to this transaction on the ground that it is not supported by the evidence and is contrary to the evidence. In effect, the defendant contends that the overpayment of salary resulted from fraud and dishonesty of Layton and that the directors of the company had

knowledge of the fraud. Defendant's contention is important because defendant contends that its bond was canceled because of the discovery by the insured of a fraudulent or dishonest act on the part of one or more employees, and consequently its bond would not be liable for subsequent losses, however fraudulent they might be.

■■ We have reviewed the evidence in regard to the salary withdrawal and are of the opinion that the trial court's findings of fact are supported by substantial evidence and are not clearly erroneous, and are therefore binding on this court. Wight v. Chandler, 10 Cir., 264 F.2d 249; McNutt Oil & Refining Company v. Mimbres Valley Bank, 10 Cir., 174 F.2d 311; Prudential Insurance Company of America v. Carlson, 10 Cir., 126 F.2d 607.

An audit, sometime after the close of business on June 21, 1956, disclosed three additional losses occurred subsequent to the withdrawal of the $1,000 salary. These losses came about substantially as follows:

On June 8, 1956, $802.63 was deposited to plaintiff's account in the First National Bank of Englewood, Colorado, and on June 11, 1956, that amount was transferred from the corporate bank account to Layton's personal account in said bank.

On June 21, 1956, Art Stone, an automobile dealer in Denver, Colorado, purchased an automobile at plaintiff's auction and paid $935 cash therefor. This sum was never deposited in plaintiff's bank account, but was placed in a locked drawer and removed therefrom on June 21, 1956, by some employee of plaintiff.

On June 20, 1956, Art Borror, an automobile dealer at Alliance, Nebraska, consigned to plaintiff for sale through the auto auction a 1955 Cadillac automobile, and he fixed as the upset price for the sale of the Cadillac the sum of $3,450. Layton advised Borror by telephone on June 21, 1956, that the Cadillac failed to bring $3,450 at the auction, but that he could sell it in Phoenix, Arizona, for that price. Borror, at all times, dealt with

Layton as president of plaintiff and as an employee of the plaintiff, and he authorized him, in that capacity, to take the Cadillac to Phoenix to sell. Layton did take the Cadillac to Phoenix and he did sell it there, but he failed to remit the proceeds of the sale to either Borror or plaintiff. On July 21, 1956, plaintiff paid Borror $3,430, representing the agreed price of $3,450 less the auction's standard commission of $20.00.

 The trial court found that the $802.63 loss, the $935 loss, and the $3,-450 loss each occurred as a result of fraud or dishonesty on the part of some employee of plaintiff within the meaning of the fidelity bond, and plaintiff sustained the loss in each instance as a result of fraud and dishonesty on the part of some employee. Defendant challenges the finding of the court in each instance on the ground that it is not supported by the evidence and is contrary to the evidence. A review of the evidence convinces us that the finding of the court in each instance is supported by substantial evidence and is binding on this court.

Finally, the defendant contends that under Section 15 of its bond, plaintiff is barred from maintaining this action. Section 15 provides as follows: " * * * No suit to recover on account of this bond shall be brought before the expiration of two months from the filing of proof as aforesaid on account of such loss, nor after the expiration of fifteen months from the discovery as aforesaid of the fraudulent or dishonest act causing such loss * * * "

Plaintiff filed a written claim on August 5, 1956. On August 16, 1957, defendant made an oral offer of settlement which was not accepted by plaintiff. On November 27, 1957, almost a month after the expiration of the contractual limitation period, the defendant made an offer of settlement in writing. Plaintiff rejected the written offer and filed suit on January 17, 1958. The trial court concluded that the defendant was estopped to assert the strict limitation provision of Section 15 of the bond under these circumstances and that the contractual period of limitation does not afford a defense.

The decisions of the courts, state and federal, present a sharp conflict on this particular problem. Since this suit arose in Colorado and is here because of diversity jurisdiction, we look to and are controlled by the applicable decisions of the Supreme Court of Colorado. In our opinion, Colorado has effectively disposed of this problem in favor of plaintiff's contention. Prudential Insurance Company of America v. Hummer, 36 Colo. 208, 84 P. 61; Supreme Tribe of Ben Hur v. York, 70 Colo. 175, 197 P. 1012.

The judgment is accordingly affirmed.