No. 15,099.

SCHMIDT *v.* HURST ET AL.

(124 P. [2d] 235)

Decided March 9, 1942.   Rehearing denied March 30, 1942.

Mr. H. MAX SCHMIDT, pro se, Mr. CLIFFORD E. MORGAN, for plaintiff in error.

Mr. W. W. GRANT, Mr. MORRISON SHAFROTH, for defendant in error Hurst.

*En Banc.*

MR. JUSTICE BOCK delivered the opinion of the court.

THIS is an action in mandamus, brought by Harold Hurst, one of defendants in error, a provisional appointee in the state department of revenue, to compel the State Civil Service Commission to certify, and the state treasurer to pay, his salary as chief of staff services in the newly created department of revenue, from August 15 to August 31, 1941. The trial court ordered certification and payment. The case is here by writ of error sued out by H. Max Schmidt, plaintiff in error, who was intervener in the court below. The Civil Service Commission favored the position taken by Schmidt.

The position of chief of staff services was authorized by the Administrative Code which became a law March 14, 1941 (S.L. '41, p. 35, c. 2). Under the provisions of section 34 of this code the director of revenue, with the

approval of the Governor, appointed Hurst, a provisional employee, as chief of staff services, whose duties, as described by the director of revenue in a letter to the Civil Service Commission prior to his appointment, are as follows: "To make procedural studies and to compile, devise and report on statistical information and to conduct research activities; also to prepare and transmit all information for the staff, the taxpayer and the public in relation to the collection of state revenue." To more fully describe these duties, we quote from the language of the learned trial judge as contained in his decision designated "Findings and Judgment," as follows: "The office of Chief of Staff Services is probably the key position, outside of the Director himself, in the reorganized revenue department. As Mr. Carpenter expressed it, the holder of that job must 'find the bugs and bottlenecks in the outfit and sandpaper 'em off.' The Chief of Staff Services is more closely and more intimately tied to the Director than any other position. He is somewhat of a confidential adviser to the Director, who in turn, by the Code itself, must advise the Governor and the legislature. Familiarity with Colorado tax laws by study or administrative experience is not enough to qualify for this position. The duties of the office, as outlined by the Director, call for something more. Knowledge gained by research and intensive study of the broad theories of taxation and revenue-raising procedure is required of the man who is to adequately fill the position. Such knowledge cannot be acquired in a short space of time or by experience in a particular job, alone. Scholastic achievement under experts in the field of taxation, in the opinion of the Director at least, is necessary to qualify for this office."

After many conferences between the director of revenue and members of the Civil Service Commission and a discussion in detail as to the eligible lists, the commission decided that it had no list from which to select a chief of staff services, and suggested to the director

of revenue that he obtain assistance in such selection from those having experience in employing such persons, and suggested Dean Clem W. Collins, head of the School of Commerce of the University of Denver, as one of the sources. The director of revenue acted upon this suggestion, which resulted in the recommendation of Hurst by Dean Collins. There being no eligible list available, the Civil Service Commission, June 27, effective July 1, 1941, authorized the provisional appointment of Hurst to the position in question, without prejudice to certain seniority or rating rights. It is conceded by all parties that this procedure was in harmony with the following provisions of section 34, chapter 2, supra:

"The director of revenue, subject to the approval of the governor, may create such divisions or departments within the department of revenue as he deems necessary for the proper and efficient functioning of said department, and, when established, may appoint, subject to the approval of the governor, all heads of divisions and subordinate departments. All such appointments shall be from a qualified list prepared by the Civil Service Commission, and wherever possible *shall be taken in the order of their seniority* from the departments named in section 32 of this act, the functions of which have been transferred to the department of revenue. If there be no eligible list for the position or positions to be filled, the Civil Service Commission shall forthwith issue to the appointee named by the director as aforesaid a provisional appointment, which shall remain in effect until examination is had and such eligible list established, and in no event for a longer period than six (6) months.

"The director of revenue, with the written approval of the governor, may combine existing divisions or reduce the personnel in any division or department or combined divisions or departments or in the department of revenue as a whole, in which case all employees so losing their positions for such reason shall, *in the order*

*of their seniority,* be placed at the head of the eligible list of like qualifications and duties by the State Civil Service Commission; provided, however, that if such employee be a provisional employee he shall not be placed at the head of any such list unless and until he shall have passed the regular examination of the classified service for such position and then only if his or her grade in such examination entitles such person to such position on said eligible list."

This provision is declaratory of the state Constitution, statutes and rules relating to the State Civil Service Commission, as interpreted by the courts, except perhaps the six month's limitation on provisional appointments, with which we are not here concerned. At any rate, at the time of the filing of briefs no competitive examination had been held for the position involved. It must be clear, from what we thus far have said, that upon those facts Hurst would be entitled to the salary for which the suit was brought; but counsel for Schmidt challenges this conclusion by asserting that he was legally appointed by the Civil Service Commission to the position in question, which terminated the provisional appointment of Hurst. His contention is that August 12, 1941, the commission directed the director of revenue to terminate the provisional appointment of Hurst and certified to the department of revenue his name for the same position. If this certification is valid, Schmidt must prevail; if not, Hurst is entitled to his salary.

What are the facts concerning the Schmidt certification to the position involved? Until July 30, 1941, he was a revenue collector under the classified service; and was No. 44 on the list of those who took the examination for that position. Owing to a reduction in the number of revenue collectors, growing out of the reorganization of the department of revenue, and in an attempt to conform with the provisions of section 57, chapter 2, S.L. '41, his name was placed on a so-called preferred eligible list, on which it appears as No. 31 in

order of seniority. The secretary of the commission, in testifying as to the method used in selecting Schmidt from this list, stated: "All of the preferred list had to be considered down until we reached the name that had the qualifications in the opinion of the commission." She further stated that this list could be used in certifying for appointment any "revenue collectors to any other position which the commission feels they are qualified to fill." Schmidt's salary as a revenue collector was $1,800 per annum, which, under Civil Service Rule VIII (7), placed him in Grade 4. The salary of the chief of staff services is $3,000 per annum, which, under the same rule and paragraph, placed this position in Grade 6. Schmidt had taken the following civil service examinations: Excise tax inspector, in which he stood 19th on the list. Revenue collector, in which he stood 44th on the list. Cashier and assistant cashier, in which he stood 25th on the list. Assistant director, sales and service tax division, in which he stood 18th on the list. At the time of Schmidt's appointment all of these lists had expired.

■ Since Schmidt was appointed from a preferred eligible list, we first consider the validity of this action of the commission. The legal basis for a preferred eligible list is Rule X, and section 57, supra, under which Schmidt concedes the commission acted in selecting him as chief of staff services. The rule provides in part as follows:

"(1) Whenever a person who has been permanently appointed to a position in the classified service is separated from the service through no delinquency or misconduct on his or her part, the name of such employee shall be entered upon a separated list of eligibles to be known as the 'Preferred List of Eligibles,' and such list shall take precedence over any and all other eligible lists, and he or she shall be certified into any vacancy existing or occurring in the service, and duties of *which are of a same or similar character.*

"Any position occupied by a provisional appointee shall be immediately vacated when it is found that anyone on the preferred list of eligibles is qualified to fill such position."

It will be noted that the certification shall be to a vacancy "in the service, and duties of which are of a same or similar character." Schmidt was a collector of revenue. The services and duties of a revenue collector are not the same as, or similar to, the duties of chief of staff services. True, counsel for the commission contend that in consideration of all of the other positions for which Schmidt took an examination and qualified, resulting in the lists which had expired, he was entitled to appointment to the position involved. The fallacy of that contention is that he must have been selected from a qualified list according to seniority. Section 57, supra, expressly provides for a list "in the order of their seniority." If there is a qualified list as required by the rule, then, in order to satisfy section 13, article XII, of the state Constitution, "the person ascertained to be the most fit and of the highest excellence" must be first appointed. A list is deemed sufficient if the examination from which it has resulted has been one "which in the opinion of the commission has properly tested the qualifications necessary to efficiently perform the duties as outlined in requisition to fill existing vacancy." Rule VI (2). No authority need be cited in support of the proposition that if any person, not the head of an appropriate list, can be certified in a given case, it is a violation of the principle of competition which lies at the base of the merit system. Under any circumstances, the first name at the head of the preferred eligible list as a collector of revenue would have been entitled to this position, if it was "of the same or similar character." The commission failed to appoint such a person. Schmidt appears 31st in rank on this list, passing over thirty others who had a higher grade as collector of revenue, the position held by Schmidt July 30, 1941. The con-

clusion is uncontrovertible that the action of the commission in certifying Schmidt was invalid and in excess of its authority, and this for two reasons: first, that the certification was not based upon seniority, as required by sections 34 and 57, supra, the rules of the commission, and section 13 of article XII of the state Constitution; and, second, because the position of collector of revenue was not of a same or similar character as that of chief of staff services, for if it was, why did the commission select the thirty-first, instead of the first, name on the list of collectors of revenue? The question answers itself.

There also is another reason why the action of the commission, in certifying Schmidt, cannot be sustained. Section 13 of article XII of the Colorado Constitution reads in part as follows:

"Appointments and employments in and *promotions* to offices and places of trust and employment in the classified civil service of the state shall be made according to merit and fitness, to be ascertained by competitive tests of competence, the person ascertained to be the most fit and of the highest excellence to be first appointed."

We also quote from Civil Service Rule VIII, relating to promotions, as follows:

"(1) A change in rank or grade shall constitute a promotion or a reduction. A material change in duties and in responsibilities shall be deemed a change in rank, and an increase in salary beyond the limits fixed for the grade by clause 7 of this rule, shall be deemed a change in grade.

"Whenever a change in grade occurs without a change in position or a material change in duties or responsibilities, persons so affected may be promoted without further examination, when, in the opinion of the commission, their merit and fitness have been determined by previous examinations or law, and by the records of

efficiency of the department or institution in which they are employed.

* * * *

"(5) If the vacancy to be filled is in a position in Grade 3, 4, 5 or 6, the commission may, if it deems that on account of the executive ability required to fill the position promotion by competitive examination is impracticable and not for the best interests of the service, hold an original competitive examination without regard to the number of persons in the next lower rank or grade.

"(6) The examination shall be conducted, the eligible list drawn up and requisition, certification and appointment made in the same manner as prescribed for original appointment in Rules IV, V and VI.

"(7) The grades for all departments, offices and institutions shall be the following:

* * * *

Grade 4. All positions, the compensation of which is at the rate of more than fifteen hundred dollars ($1,500) and not more than two thousand dollars ($2,000) per annum.

Grade 5. All positions, the compensation of which is at the rate of more than two thousand dollars ($2,000) and not more than twenty-five hundred dollars ($2,500) per annum.

Grade 6. All positions, the compensation of which is at the rate of more than twenty-five hundred dollars ($2,500) per annum."

Rule IX (1), relating to transfers, reads as follows: "(1) A person who has been permanently appointed to a position in the classified service may be transferred, with the consent of the Civil Service Commission *and of the heads of the departments affected thereby,* to a similar position in the same class, sub-class and grade.

216

In special circumstances, one or more of the limitations concerning class, sub-class and grade may be waived by the commission; but no transfer shall be made to a position which, in the opinion of the commission, can be adequately filled by promotion."

As we already have indicated, Schmidt's rank was 31 and his grade 4. Under the Constitution, a promotion is invalid without a competitive test, in which "the person ascertained to be the most fit and of the highest excellence" is entitled to appointment, notwithstanding any rule to the contrary. Rules which are inconsistent with the express provisions of article XII, section 13, are void and of no effect. *McDevitt v. Corfman,* 108 Colo. 571, 120 P. (2d) 963. In the latter case we held a civil service rule invalid which permitted the appointing power to summarily discharge a person in the classified civil service within the so-called probation period after the employee had been certified under competitive examination. Civil service Rule VIII indicates that an examination must be given to those in the next lower rank or grade, or, if that is not practicable, an original competitive examination should be held, without regard to the number of listed persons in the next lower rank or grade. In the instant case Schmidt was in Grade 4. The position to which he was appointed was in Grade 6. A change in rank is a material change in duties and responsibilities. A change to a higher grade calls for an increase in salary from one fixed limit to another. A transfer under Civil Service Commission Rule IX is a change to a similar position in the same class or sub-class or grade, with the consent of the commission and the heads of the departments affected. Under the presented facts, there is here a material change in duties and responsibilities. Schmidt's salary of $1,800 per annum places him in Grade 4. The salary of the chief of staff services is $3,000 per annum, which is Grade 6; consequently there is here a jump of two salary grades, with the result that we have a promotion

without competitive examination, which is not a transfer, and which is not a change in a similar position in the same class or sub-class and grade with the consent of the heads of the departments. In 10 American Jurisprudence, page 929, section 10, we find the following statement of the law: "The regulations of civil service systems usually extend to cases of promotions, transfers, and reinstatements, as well as those of original appointments to public offices and positions. Where a person is promoted, the general requirement is that he must submit to examinations in order to demonstrate his fitness for the new position. Transfers, on the other hand, are customarily allowed upon request without any requirements as to an examination. Occasionally attempts are made to make promotions under the name of transfers. This is in conflict with the civil service regulations, and transfers can only be made when they do not in fact constitute promotions. * * *." It may be said that since Schmidt was temporarily out of a position, the applicable provisions to promotions are not in point here; but such contention would not be tenable under the facts before us. Schmidt, at the time of his selection from the so-called preferred eligible list, had a status as a collector of revenue in the classified service. The action of the commission was in effect a promotion in rank and grade from collector of revenue to chief of staff services. If a temporary unemployment permits such a promotion in a classified service status, then we have a device that would permit the circumvention of the Constitution in allowing promotions without competitive tests. Such a procedure would clearly be unconstitutional and would tend to destroy the competitive-test merit system. The result of permitting the employment of such devices is well illustrated in the cases of *Hale v. Worstell*, 185 N.Y. 247, 77 N.E. 1177, and *Mendelson v. Finegan*, 5 N.Y.S. (2d) 875.

Counsel for Schmidt contend that under Rule X, relating to reinstatements, and heretofore quoted, the

commission was justified in making the certification. In so far as the commission, under this rule, attempts to select any person from the preferred eligible list regardless of seniority, its action must be held invalid because in conflict with the constitutional provision which makes it imperative that promotions shall result only from competitive examinations and be according to seniority. We are here concerned with lists, not with the selection of individuals from such lists, regardless of rank. To sustain their contentions, they rely upon the case of *Getty v. Witter,* 107 Colo. 302, 111 P. (2d) 636. In that case there was involved the reasonable exercise of the discretion of the commission to give nonassembled or assembled examinations for certain positions. In the present case the commission had no power whatever to do what it attempted in certifying Schmidt as chief of staff services.

Because of our conclusions, we deem it unnecessary to discuss other questions raised and discussed in the briefs.

The judgment is affirmed.