No. 19,596.

JOHN H. TURNER, ET AL. *v.* THE CITY AND COUNTY OF DENVER, ET AL.
(361 P. [2d] 631)

Decided May 1, 1961. Rehearing denied May 22, 1961.

Mr. Sol Cohen, Mr. Joseph E. Maker, for plaintiff in error John H. Turner.

Mr. Julius I. Ginsberg, for plaintiff in error Albert L. Martinac.

Mr. Donald E. Kelley, City Attorney, Mr. Brian H. Goral, Assistant, for defendants in error.

Mr. Anthony F. Zarlengo, Mr. V. G. Seavy, Jr., Amici Curiae.

*In Department.*

Opinion by Mr. Justice Doyle.

338

BEFORE us for review is a judgment of the district court reversing an order of the Civil Service Commission of the City and County of Denver which reinstated the plaintiffs in error to the positions of police officers which they had previously held. They had been dismissed by the Manager of Safety following a hearing before him. Plaintiffs in error were members of the Police Department in the Classified Service of the City and County of Denver. The charge which resulted in their dismissal involved alleged mistreatment by them of a prisoner entrusted to their custody.

On the day in question they were driving what is referred to as a scout car, a small panel truck used to transport prisoners. They were ordered to pick up one DeHerrera and another prisoner and did so. DeHerrera had been drinking heavily and was causing a disturbance in the back of the scout car. According to their story, they stopped the vehicle for the purpose of investigating the noise which DeHerrera was creating in the back of the truck. As one of the officers opened the double doors in the back of the truck, DeHerrera rushed at him. The officers maintain that the beating administered to DeHerrera was a necessary measure in self-defense or to prevent escape. In concluding that the charges were sustained, the Manager determined that it was wholly unnecessary to stop the vehicle since they were within a few blocks of the police building and also found that the officers had failed to disclose the true facts when the incident was investigated. The officers at first denied any knowledge of the incident and later advanced the "investigation of noise" version which has been referred to. The Manager of Safety concluded that the evidence fully sustained the charges and ordered the dismissal. He gave a detailed analysis and findings. Thereupon the officers appealed to the Civil Service Commission, and following a hearing had before that body consisting of a review of the evidence adduced before the Manager of Safety, the Commission issued a

"Decision and Order" which contained the following:

"The Commission having carefully reviewed the record of the testimony presented at the hearings before the Manager of Safety and Excise and the Manager's findings and decisions; having studied the application for review, the reasons presented and the relief requested; and having heard argument of counsel pertaining thereto; does by unanimous vote render the following decision and order:

"The decision of the Manager of Safety and Excise is reversed and that it be ordered the petitioners John H. Turner and Albert L. Martinac be restored to their former positions in the classified service of the Denver Police Department without prejudice."

Pursuant to Rule 106a (4), R.C.P. Colo., this action was commenced in the district court to review the order of the Commission by the City and County of Denver, the Mayor and Manager of Safety as plaintiffs and the officers, together with the Civil Service Commission, as defendants. However, after the Civil Service Commission had certified its record of the proceedings before it, the trial court ordered its dismissal from the case. At the same time the trial court held that the City, the Mayor and the Manager of Safety were proper parties to the action. The court reasoned that it was inconceivable that the Civil Service Commission should be a court of last resort and that its action in any particular case could not be reviewed "by this court in the interest of the people of the city, as well as of the two policemen."

In holding that there was sufficient evidence to justify the order of the Manager of Safety, the Judge commented:

"The Manager would be naive indeed if he could 'swallow' the story of the policemen that all they could remember about the evening of June 17, was the pick-up of a prisoner at 2056 Larimer Street. True, their denial of any mis-handling at the Police Building was correct; but the Court agrees with the Manager that they de-

liberately concealed the antics in the alley in the first instance and feigned surprise when their superior officers were trying to pry the whole truth from them.

"And since when, we ask the Manager, has it become routine for a patrolman to stop his scout car in a dark alley, a few blocks from the Police Station, turn out the lights and shut off the engine, to investigate a disturbance by a prisoner inside?

"As far as the general testimony is concerned, the Manager saw and heard all the witnesses in person. He observed their manner and demeanor upon the stand. The picture and impressions he there received convey far more of the real truth about the incident than any review of a transcript could accomplish.

"He is the judge of their credibility; his was the job to determine who was telling the truth. Certainly, no judge or Civil Service Commission could do as well from the cold words on a printed page; and far removed, as they are from the real unfolding of the drama."

The inadequacy of the Commission's findings was also commented on by the trial court:

"The Commission in its decision and order states no reason therefor, makes no finding of fact, and indicates not the slightest basis for a reversal of the Manager's finding. They haven't said he was arbitrary or capricious in the matter, or that the evidence presented before him was insufficient upon which to make his finding; nor can the Court see how they *could* brand his action as such. He gave all parties a careful and extended hearing. He weighed the evidence, police rules, Charter provisions and the law carefully; gave long, painstaking attention to the case; and there was sufficient evidence in the record to justify his final conclusions. It seems to the Court that if anybody acted arbitrarily and capriciously in this case, it was the Civil Service Commission."

In seeking reversal, counsel for the officers urge:

1. That the trial court erred in taking jurisdiction;

that it lacked authority to review the ruling of the Manager of Safety or the Civil Service Commission.

2. That it was error to dismiss the Civil Service Commission as a party.

3. That the trial court erred in reversing the Civil Service Commission and affirming the decision of the Manager of Safety for the reason that, assuming that the trial court could conduct a review, its review was limited to a holding that the order of the Civil Service Commission was insufficient and that it should therefore have remanded the case to the Civil Service Commission for further proceedings and specific findings.

I. *The question whether the order of the Civil Service Commission was reviewable in district court under Rule 106 (a) (4).*

We are of the opinion that the court was correct in entertaining the complaint of the defendants in error made pursuant to Rule 106 (a) (4) of the Rules of Civil Procedure.

The Civil Service Commission of the City and County of Denver is created in the Denver City Charter. The Charter does not spell out a procedure for judicial review of the orders of the Commission, but a remedy nevertheless exists through the extraordinary writs, provision for which is found in the Constitution of Colorado, Article VI, sec. 11. See *County Commissioners of El Paso County v. City of Colorado Springs,* 66 Colo. 111, 180 Pac. 301 (mandamus); *Friesen v. People ex rel. Fletcher,* 118 Colo. 1, 192 P. (2d) 430 (quo warranto). The argument against certiorari under circumstances such as we have here is that it does not lie to review an executive or ministerial act. See *Nisbet v. Frincke,* 66 Colo. 1, 179 Pac. 867; *State Civil Service Commission v. Cummings,* 83 Colo. 379, 265 Pac. 687. In the latter case it is said that mandamus is the proper remedy. It may well be that mandamus would be proper if an effort were being made to compel the Civil Service Commission to reinstate an aggrieved employee. It would seem, however,

that when the Commission is acting in a quasi judicial capacity as here, certiorari is the proper remedy for review of its decision. See *State Civil Service Commission v. Colorado Board of Health,* 111 Colo. 109, 138 P. (2d) 934; *State Civil Service Commission v. Hoag,* 88 Colo. 169, 293 Pac. 338; *Hawkins v. Hunt,* 113 Colo. 468, 160 P. (2d) 357; *Hanebuth v. Patton,* 115 Colo. 166, 170 P. (2d) 526; *State Civil Service Commission v. Hazlett,* 119 Colo. 173, 201 P. (2d) 616. We perceive no error arising from the choice of remedy.

II. *The question whether the Mayor and Manager of Safety could seek review of an order of the Civil Service Commission.*

 The basic purpose of civil service laws is to secure governments, local, state and national, efficient public servants. Such laws seek to promote the welfare of the individual civil servant, but an overriding policy is promotion of the best interests of the public as. a whole. *Borough of Park Ridge v. Salimone,* 21 N.J. 28, 120 A. (2d) 721 (Vanderbilt, J.). Accepting this basic principle and considering that our decisions have repeatedly held that certiorari is available on behalf of an aggrieved employee, it would seem to follow that the public, the City and County of Denver, acting through its proper officers in the public interest, may exercise the remedy extended to individuals even though specific provision is not made therefor in the Charter. The Rules of Civil Procedure are broad enough to cover this condition. Rule 106 (a) (4) provides:

" * * * Where an inferior tribunal (whether court, board, commission or officer) exercising judicial or quasi-judicial functions, has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy. * * * " relief may be granted. It makes no distinction between an aggrieved individual and a municipal corporation which seeks review in the interest of the public as a whole.

 *Denver v. Keuhn,* 132 Colo. 348, 290 P. (2d) 1114,

is not contrary. The holding in that case was that the City and County of Denver, not having been a party before the Board of Adjustment, was powerless to prosecute a writ of error. In the present case the City was represented before the Civil Service Commission and must be held to be within its rights in filing certiorari in the district court. Cf. *City and County of Denver v. Redding-Miller, Inc.*, 141 Colo. 269, 347 P. (2d) 954.

III. *Did the district court err in holding that the Civil Service Commission abused its discretion?*

█ The remaining issue pertains to the extent of the authority of the Civil Service Commission to review such dismissal. Section 238 of the Charter of the City and County of Denver (1953) authorizes the Commission to " * * * examine into the facts and if the person has been wrongfully discharged may reinstate him." Does this authorization allow the Civil Service Commission to examine the evidence and findings of the Manager of Safety and reverse his decision without taking further evidence and making additional findings? We think not. These words do not give the Civil Service Commission a plenary authority in the area of discharge and reinstatement of members of the Classified Service. The words must be construed as permissive.

*Hawkins v. Hunt,* supra, furnishes a guide to the meaning of the grant of authority to the Civil Service Commission. In that case Hunt, a police officer, had been demoted for misconduct and this ruling had been sustained by the Civil Service Commission. He thereupon brought mandamus in the district court, but at the same time demanded that the record before the Civil Service Commission be brought before the district court. The matter was reviewed on writ of error in this Court and the view was here taken that the remedy pursued in the district court had been certiorari. It was determined that the Commission had restricted itself to an examination of the proceedings before the Manager of Safety and that the officer did not have an absolute right to

trial *de novo*. In holding that the words of the Charter provision in question limited the Commission's review authority, the Court said:

" * * * Plaintiff in his 'Affidavit and Petition for Review and Appeal' from the Manager to the Commission did not allege that he had any new and additional evidence which he desired to offer in his behalf and which would establish his innocence. He was clearly guilty as charged unless his sworn statement before the Manager was false. There were no disputed facts in the hearing before the Manager. Consequently, there was nothing for the Commission to do in the absence of any allegation that there was new and additional evidence except to examine the record and determine from it whether or not plaintiff had been fairly and honestly dealt with under the rules and regulations of the department. There was no occasion and no necessity for a trial de novo before the Commission, and, under the circumstances, plaintiff is in no position to complain of a failure to accord him such a trial."

The Court went on to say that both the Manager and the Commission had jurisdiction and that nothing in the record evidenced any abuse of discretion.

Further insight as to the meaning of the words "The Commission may examine the facts" is to be found in the opinion of the Commission (signed by John J. Cory, William E. Hutton and Horace Hawkins, Jr.) appearing in the original record in the Hawkins case. The Commission noted that it was open to argument that these words restricted the Commission in all cases to the facts and law arising from the record of proceedings before the Manager of Safety, and added:

" * * * On the other hand, it may be contended, as it is by counsel for the discharged Sergeants in the instant case, that the facts to be inquired into are all the facts including the existence of the grounds upon which the discharge was made, and that a discharged member of the classified service is entitled to a trial *de novo* before

the Commission as a matter of right. There are cogent reasons for each of these views, but we subscribe to neither in its entirety. We believe that the Commission must be considered to have jurisdiction to in effect permit a discharged person a trial *de novo,* otherwise, the charter prohibition against discharges for political and religious causes and for causes other than those promoting the efficiency of the service could be circumvented by skillful pleading and adroit presentation of evidence and the employment of cunning in drafting the order of discharge. The existence of such jurisdiction, however, is one thing, and the determination of the circumstances under which it should be exercised is another. To permit a trial *de novo* in every case would allow a police officer, no matter what offense he was charged with, to flout the demands of the head of his department for an explanation, reserving his disclosure of the facts until after his discharge and the assumption of jurisdiction by the Commission. * * * "

From the foregoing, it is reasonable to conclude that the Commission has two alternatives:

1. It may simply review the record before the Manager of Safety to determine whether the officer was properly charged and whether the evidence adduced at the hearing before the Manager substantiates the charge and supports the findings and conclusions of the Manager. If the Commission follows this course, it is bound by the Manager's supported findings and may not adopt different conclusions without expressly determining that the findings are not supported by the evidence, or that there is an error in law.

2. The Commission may in its discretion extend to the discharged person a "trial *de novo*" before the Commission. If it elects to follow such course its exercise of discretion would have to be based on the new evidence or other similar valid sufficient ground; new findings would then be necessary. The Commission would, of course, be justified in denying a new hearing for insufficiency of

showing by the aggrieved person in support of his request.

In the case at bar the officers did not demand a trial *de novo* and such a trial was not ordered by the Commission on its own motion. It chose to follow procedure No. 1 above. It reviewed the hearing before the Manager. Having followed this procedure, the Commission was not authorized to enter an order setting aside the Manager's findings and conclusions without some tenable legal basis upon which to ground such conclusions, as in the *Hawkins v. Hunt* case where the Court said " * * * whether or not the officer has been fairly and honestly dealt with under the rules and regulations of the department."

It follows that the trial court was correct in setting aside the Commission's order of reinstatement. Accordingly, the judgment is affirmed.

MR. CHIEF JUSTICE HALL and MR. JUSTICE McWILLIAMS concur.