COLORADO ASSOCIATION OF PUB-
LIC EMPLOYEES, a nonprofit Colora-
do corporation; Harry C. Reese; C.W.
Peterson; William N. Walker; and Vel-
ma I. Carlson, Plaintiffs-Appellees,

v.

Richard D. LAMM, in his official capaci-
ty as Governor of Colorado; Gail H.
Klapper, in her official capacity as Ex-
ecutive Director of the Colorado De-
partment of Personnel; the Colorado
Department of Personnel; and the Col-
orado State Personnel Board, Defend-
ants-Appellants.

No. 82SA16.

Supreme Court of Colorado,
En Banc.

Feb. 21, 1984.

Rehearings Denied April 2, 1984.

James R. Gilsdorf, Sheila H. Meer, Denver, for plaintiffs-appellees.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., David K. Rees, Timothy R. Arnold, Asst. Attys. Gen., Denver, for defendants-appellants.

LOHR, Justice.

This is an appeal from a judgment of the Denver District Court declaring certain provisions of the State Personnel System Act, Sections 24–50–101 to –142, C.R.S.1973 (1982 Repl.Vol. 10 & 1983 Supp.), and regulations promulgated thereunder to be invalid because they violate Article XII of the Colorado Constitution. We affirm in part and reverse in part.

## I.

In 1981, the General Assembly enacted Senate Bill No. 308, Colo.Sess.Laws 1981, ch. 304 (S.B. 308), amending the State Personnel System Act in numerous respects. This new legislation reflected in large measure the recommendations of the Governor's Executive Committee on Personnel Management in State Government, contained in its final report issued January 1, 1981, entitled "Revitalizing The State Personnel System." S.B. 308 was to take effect July 1, 1981, and emergency rules to implement the statutory changes were promulgated to become effective on that same date. These rules were later made permanent.

On June 29, 1981, the Colorado Association of Public Employees, two of its officers, and two employees of the State of Colorado brought this action in Denver Dis-

trict Court challenging some of the provisions of S.B. 308 and the rules adopted thereunder as inconsistent with Article XII of the Colorado Constitution, which contains detailed provisions with respect to the state personnel system. The plaintiffs sought declaratory and injunctive relief. Named as defendants were Richard D. Lamm, as Governor of Colorado; Gail H. Klapper, as Executive Director of the Colorado Department of Personnel; the Colorado Department of Personnel; and the Colorado State Personnel Board.

After the plaintiffs' motions for a temporary restraining order and for a preliminary injunction were denied, the case was tried on the merits. On October 26, 1981, the court issued written findings of fact, conclusions of law and a judgment granting much of the relief requested by the plaintiffs. The defendants appealed, challenging the court's determinations that: (1) the provisions of S.B. 308 granting rule-making authority to the State Personnel Director (Director) violate *Colo. Const.* Art. XII, §§ 14(3) and (4), which vest rulemaking authority exclusively in the State Personnel Board (Board); (2) Section 24–50–124(1) of S.B. 308, modifying criteria and procedures to be employed in separating certain certified employees from state service, violates the veterans' preference provisions of Article XII of the Colorado Constitution; (3) Section 24–50–115(6) of S.B. 308, requiring a probationary period for employees who are promoted, transferred to a different position at their request, or hold a position that is reallocated to a higher pay grade, contravenes sections 13(8) and 13(10) of Article XII of the Colorado Constitution; (4) Sections 24–50–101(3)(a) and 24–50–104(3)(g) of S.B. 308 introduce criteria for employment and promotion that are inconsistent with the constitutionally prescribed system based on merit and fitness, to be ascertained by competitive examination; (5) the authorization in *Colo. Const.* Art. XII, § 13(9) to make temporary appointments for a period of up to six months without complying with the personnel system's hiring criteria and procedures cannot be construed to allow the appointment of temporary employees to complete up to 1040 hours of work in a twelve-month period as purportedly permitted by section 24–50–114(2) of S.B. 308. We agree with the fifth ruling and with that part of the fourth that holds section 24–50–104(3)(g) unconstitutional, but reverse all the other determinations summarized above.

## II.

As a preliminary matter, it is useful to review the standards by which the sufficiency of a statute is to be tested under the Colorado Constitution. The General Assembly has plenary legislative powers, conferred by the people in their Constitution. *People ex rel. Tucker v. Rucker,* 5 Colo. 455 (1880). These powers, however, are subject to express or implied restraints reflected in the Constitution itself. *People ex rel. Livesay v. Wright,* 6 Colo. 92 (1881); *People ex rel. Tucker v. Rucker, supra.* The legislature cannot enact a law contrary to those constitutional restraints. *Mauff v. People,* 52 Colo. 562, 123 P. 101 (1912). We have consistently recognized that every statute is presumed to be constitutional and this presumption can be overcome only by showing that the enactment is unconstitutional beyond a reasonable doubt. *E.g., Colorado Auto & Truck Wreckers Association v. Department of Revenue,* 618 P.2d 646 (Colo.1980); *Mr. Lucky's, Inc. v. Dolan,* 197 Colo. 195, 591 P.2d 1021 (1979). The provisions of Article XII of the Colorado Constitution set forth in detail the principles under which the state personnel system is to operate. While the General Assembly can supplement the provisions of Article XII, no legislation contrary to the express or implicit requirements of that Article can survive a constitutional challenge. *See Colorado State Civil Service Employees Association v. Love,* 167 Colo. 436, 448 P.2d 624 (1968). Where the language of the Constitution is plain and its meaning clear, that language must be declared and enforced as written. *Id.; People ex rel. Park Reservoir Co. v. Hinderlider,* 98 Colo. 505, 57 P.2d 894 (1936).

With the foregoing principles as our guide, we now review the trial court's rulings.

### III.

#### A.

The trial court found that a number of the provisions of S.B. 308 purport to alter the constitutionally established roles of the Board and the Director with respect to rulemaking and delegation of authority. The court concluded, therefore, that such provisions violate Article XII, sections 14(3) and (4) of the Colorado Constitution. We disagree, and hold that each of the challenged statutes is consistent with those sections of the Constitution.

The relevant provisions of the Constitution state:

> The state personnel board shall adopt, and may from time to time amend or repeal, rules to implement the provisions of this section and sections 13 and 15 of this article, as amended, and laws enacted pursuant thereto, including but not limited to rules concerning standardization of positions, determination of grades of positions, standards of efficient and competent service, the conduct of competitive examinations of competence, grievance procedures, appeals from actions by appointing authorities, and conduct of hearings by hearing officers where authorized by law.

*Colo. Const.* Art. XII, § 14(3).

> There is hereby created the department of personnel, which shall be one of the principal departments of the executive department, the head of which shall be the state personnel director who shall be appointed under qualifications established by law. The state personnel director shall be responsible for the administration of the personnel system of the state under this constitution and laws enacted pursuant thereto and the rules adopted thereunder by the state personnel board.

*Colo. Const.* Art. XII, § 14(4).

The trial court concluded that only the Board may engage in rulemaking, and that the role of the Director is limited to administering the state personnel system under the Constitution, the statutes and the Board's rules. The district court then reviewed those sections of S.B. 308 that were challenged as contrary to Article XII, sections 14(3) and (4) and found that a number of them purported to give the Director authority that would intrude upon the Board's exclusive rulemaking jurisdiction. Concluding that the authority to issue directives "is only rulemaking by another name," the court struck down section 24–50–101(3)(c) of S.B. 308, authorizing the Director to *"provide necessary directives* ... for the management of the state personnel system."* (Emphasis added). For like reasons, the court found constitutionally infirm the last sentence of section 24–50–112(3), requiring the Director to *"establish procedures* governing the [competitive employment] examination process"; the last two sentences of section 24–50–113, mandating that the Director *"establish uniform procedures* for use by the principal departments in determining when a promotional examination may be used"; and sections 24–50–118(1) and (2), requiring the Director to *"provide for* the evaluation of employee performance."* (Emphasis added in each case.) The court also invalidated section 24–50–123, which limits Board reversal of grievance decisions made by the appointing authority to circumstances where the Board finds that "the decision was made arbitrarily or capriciously," thus—in the trial court's view—interfering with the Board's constitutional authority to set rules regarding grievances.

Finally, the trial court examined section 24–50–101(3)(d) of S.B. 308 and declared the following two sentences unconstitutional as contrary to Article XII, section 14(4):

> The heads of principal departments and presidents of colleges and universities shall be responsible and accountable for the actual operation and management of the state personnel system for their respective departments, colleges, or universities. Such operation and management

shall be in accordance with directives promulgated by the state personnel director, who shall provide postaudit review of such operation and management.

The trial court's ruling was based on its conclusion that "this language purports to transfer the administrative authority of the Director to heads of other departments and agencies within the personnel system. Since the Personnel Department and the office of the Director are constitutionally established, only that department and that officer may exercise constitutional duties specifically reserved to them."

■ We believe that the trial court's rulings reflect an inappropriately rigid view of the constitutional requirements. It is true that the Board and the personnel department are distinct entities with separate powers and responsibilities. *Spahn v. State Department of Personnel*, 44 Colo. App. 446, 615 P.2d 66 (1980). In general, rulemaking is within the proper ambit of the Board's authority, while the Director's duties and responsibilities are limited to administration. *Id.; see In re Interrogatories by Governor*, 111 Colo. 406, 141 P.2d 899 (1943). Administration, however, if it is to be effective, requires the development of procedures to implement the policy determinations reflected in the Constitution, statutes and rules. We agree with the appellants that, rather than reflecting impermissible intrusions on the rulemaking function of the Board, the challenged portions of S.B. 308 are entirely consistent with the Board's constitutionally-prescribed role. Section 24–50–112(3)—struck down by the trial court—typifies the sensitive and constitutionally appropriate division of responsibilities found throughout S.B. 308. That statute provides:

> The board shall provide by rule, considering the recommendations of the state personnel director, the conditions under which applications will be accepted, the procedures by which tests will be held,

the frequency with which candidates may compete in the same examination, and the standards by which candidates shall be deemed qualified. The state personnel director shall establish procedures governing the examination process which shall be uniformly used by the principal departments.

The Board promulgates rules; the Director establishes administrative procedures to carry the rules into effect. The procedures so established are precisely what the Constitution contemplates as long as they are administrative in nature and consistent with statutes and Board rules. *See Colo. Const.* Art. XII, §§ 14(3) and (4).[1]

■ Since the plenary power of the legislature is the general rule, a limitation of that power is an exception that must be clearly apparent. *People v. Y.D.M.*, 197 Colo. 403, 593 P.2d 1356 (1979). We find nothing in the Constitution expressly or impliedly prohibiting the legislature from empowering the Director to establish administrative procedures, as authorized by S.B. 308. *See Colorado State Civil Service Employees Association v. Love, supra*. This is an activity entirely appropriate for the Director in exercising the constitutional mandate to "be responsible for the administration of the personnel system of the state under this Constitution and laws enacted pursuant thereto and the rules adopted thereunder by the state personnel board." *Colo. Const.* Art. XII, § 14(4).

■ Similarly, section 24–50–101(3)(d) reflects a delegation of authority by law to the heads of principal departments and presidents of colleges and universities. These department heads are to act under administrative directives issued by the Director, and subject to that official's postaudit review. The Director in turn is governed by the rules promulgated by the Board under its constitutional authority.

---

1. The laws of the General Assembly and the rules of the Board have coordinate authority over the Director's administration of the personnel system under section 14(4). We need not address how the laws and rules may be inter-woven; we need only conclude, as we do, that these laws do not infringe on whatever independent constitutional authority the Board may have. *See Vivian v. Bloom*, 115 Colo. 579, 177 P.2d 541 (1947).

We find nothing in this scheme for the delegation of administrative authority that contravenes the Constitution. Rather, it reflects a legislative plan designed to preserve constitutional areas of authority and responsibility inviolate while accomplishing the degree of delegation necessary for the efficient administration of a geographically widespread college and university system. *See State v. Imperatore*, 92 N.J.Super. 347, 223 A.2d 498 (App.Div.1966). While the Director is responsible for the administration of the state personnel system, the General Assembly retains authority to make this delegation because the Director acts under the Constitution "and laws enacted pursuant thereto." *Colo. Const.* Art. XII, § 14(4).

We acknowledge that there may be administrative directives that impermissibly infringe on the Board's rulemaking authority. Clearly, the Director must implement the rules of the Board. Furthermore, there is an area where proper administrative directives leave off and rulemaking begins, and there is no litmus test to identify whether a particular administrative directive that is within this borderline area intrudes on rulemaking. This must necessarily be resolved in the context of particular directives on a case-by-case basis. *In re Interrogatories by Governor, supra.* The possibility that an administrative directive may infringe upon an area of rulemaking supplies no basis for a claim that the challenged provisions are unconstitutional on their face.

We reverse the trial court's rulings that all or parts of sections 24–50–101(3)(c), 24–50–112(3), 24–50–113, 24–50–118(1) and (2), 24–50–123, and 24–50–101(3)(d) are unconstitutional.

### B.

The trial court held that section 24–50–124(1) of S.B. 308, with respect to separation of employees from state service, is incompatible with the veterans' preference entitlement created by *Colo. Const.* Art. XII, § 15(3)(a). We disagree.

Article XII, section 15(3)(a), of the Colorado Constitution provides:

When a reduction in the work force of the state or any such political subdivision thereof becomes necessary because of lack of work or curtailment of funds, employees not eligible for added points under subsection (1) of this section shall be separated before those so entitled who have the same or more service in the employment of the state or such political subdivision, counting both military service for which such points are added and such employment with the state or such political subdivision, as the case may be, from which the employee is to be separated.

Section 24–50–124(1) of S.B. 308 states in relevant part:

When certified employees are separated from state service due to lack of work, lack of funds, or reorganization, they shall be separated or demoted according to procedures established by the state personnel director. Such procedure shall require that consideration be given to performance evaluations of the employees and seniority within the total state service.

The trial court determined this statute to be unconstitutional for two reasons. The court held that, first, the Director could not be given rulemaking authority and, second, utilization of performance evaluations in determining which employees should be separated from state service is contrary to the veterans' preference guarantees found in *Colo. Const.* Art. XII, § 15(3)(a). We have determined in part III A of this opinion that the first ground is not well-taken,[2] and we now examine the second.

Section 15 of Article XII of the Colorado Constitution is devoted to the single purpose of extending preference to veterans in obtaining and retaining employment in the

---

**2.** Although we did not specifically discuss section 24–50–124(1) in part III A, that statute's authorization of "procedures" by the Director is essentially the same as the statutory provisions discussed and upheld against constitutional challenge in part III A.

state personnel system. *See Perry v. O'Farrell,* 120 Colo. 561, 212 P.2d 848 (1949). Under subsection (3)(a), an employee entitled to credit for military service cannot be separated from employment in a work force reduction before an employee not eligible for military service credit unless the latter employee has more service in the employment of the state after the veteran's military service is considered. In that narrow circumstance, the Constitution does not permit performance evaluations to affect the determination of which employee is to be discharged. Nothing in section 15 prohibits performance evaluations from being taken into consideration in deciding who should be terminated under any other set of facts.[3]

Section 20–50–124(1) does not expressly provide that performance evaluations are not to be considered in discharge from state employment under those circumstances where the veterans' preference provision of Article XII, section 15 prohibits them from being taken into account. However, as stated above, statutes are presumed to be constitutional. Where two constructions of a statute are possible—one that will sustain constitutionality and another that will not—a court must elect the construction that will uphold the legislation. *E.g., People ex rel. C.M.,* 630 P.2d 593 (Colo.1981); *People v. Garcia,* 197 Colo. 550, 595 P.2d 228 (1979). Section 20–50–124(1) was enacted against the background of the detailed provisions of Article XII, in which section 15 clearly sets forth the veterans' preference. We believe that under these circumstances the veterans' preference provision should be read into the statute as an implied limitation on the scope of its applicability. *See Edwards v. Denver & R.G.R.R.,* 13 Colo. 59, 21 P. 1011 (1889).

Moreover, the Board recognized this constitutional limitation in enacting Rule 9–4–1(C) to supplement the statute. That rule provides:

Any additional recognition for quality of service shall not accrue if the direct effect is to deprive a veteran of his retention rights as secured by Article XII, Section 15 of the Colorado Constitution.

Reasonable interpretations of state statutes by agencies charged with their enforcement should be given deference by the courts. *Travelers Indemnity Co. v. Barnes,* 191 Colo. 278, 552 P.2d 300 (1976); *Haines v. Colorado State Personnel Board,* 39 Colo.App. 459, 566 P.2d 1088 (1977).

For the foregoing reasons, we agree with the defendants that the trial court erred in declaring section 20–50–124(1) in conflict with Article XII, section 15(3)(a) of the Colorado Constitution.

### C.

The district court ruled that those provisions of section 24–50–115(6) of S.B. 308 mandating that the Board establish probationary periods for all persons promoted, transferred into a different position at their request, or in a position that is reallocated to a higher pay grade are void because they are contrary to Article XII, section 13(10) of the Colorado Constitution, authorizing probationary periods for "all persons initially appointed." We reverse.

Section 24–50–115(6) provides:

*The board shall establish probationary periods for all persons* initially appointed, *promoted, or transferred into a different position at their request or who are in a position reallocated to a higher pay grade,* but not to exceed twelve months for any class or position. After satisfactory completion of any such period, as demonstrated by satisfactory or above average performance evaluations, the person shall be certified to such class or position within the state personnel system, but unsatisfactory performance shall be grounds for dismissal by the

---

**3.** The General Assembly retains authority to enact laws concerning the state personnel system under *Colo. Const.* Art. XII, §§ 13 and 14. *See,* *e.g., Hamilton v. City and County of Denver,* 176 Colo. 6, 490 P.2d 1289 (1971); *Vivian v. Bloom, supra.*

appointing authority during such period without right of appeal.

(Emphasis added).

■ Section 13(10) of Article XII of the Colorado Constitution reads:

The state personnel board shall establish probationary periods for all persons initially appointed, but not to exceed twelve months for any class or position. After satisfactory completion of any such period, the person shall be certified to such class or position within the personnel system, but unsatisfactory performance shall be grounds for dismissal by the appointing authority during such period without right of appeal.

Article XII, section 13(10) mandates probationary periods for newly appointed employees. It does not prohibit the establishment of probationary status for state employees who are promoted, transferred at their own request, or elevated in pay grade within the state personnel system. Under section 13(10), satisfactory completion of a probationary period after initial appointment results in certification to the class or position for which the appointment was made; it does not guarantee certified status in the event of requested transfer or promotion to a new class or position.

The plaintiffs contend that section 24–50–115(6) would have untoward and constitutionally impermissible effects. First, they assert that a person who satisfactorily completes a probationary period becomes a certified or permanent employee in the personnel system. Section 24–50–115(6), however, attempts to strip the employee's certified status if that person is promoted, transferred by request or reallocated. Thus, the argument proceeds, the permanence of certification guaranteed by section 13(10) and appeal rights under section 13(8) [4] are dissipated, and the clear purpose of providing civil service personnel with tenure, as reflected in those sections, is defeated. The appellees' argument, however, fails to focus on the precise terms of the constitutional guarantee. Successful completion of a probationary period after initial hiring assures certification to the class or position within the personnel system for which the employee was hired. Nothing in section 13(10) assures certification to a new or different position upon promotion, requested transfer, or reallocation.

■ The legislature, by enacting section 24–50–115(6), has determined that probationary periods are important to ensure the suitability of an employee for a new class or position that is obtained by promotion, requested transfer or reallocation. The statute reflects legislative recognition that a person who is competent in one job may not perform satisfactorily in a different position. Thus, before an employee achieves certified status in the new position it is appropriate to subject that person to a new probationary period.[5]

---

4. Section 13(8) of Article XII of the Colorado Constitution provides:

Persons in the personnel system of the state shall hold their respective positions during efficient service or until reaching retirement age, as provided by law. They shall be graded and compensated according to standards of efficient service which shall be the same for all persons having like duties. A person certified to any class or position in the personnel system may be dismissed, suspended, or otherwise disciplined by the appointing authority upon written findings of failure to comply with standards of efficient service or competence, or for willful misconduct, willful failure or inability to perform his duties, or final conviction of a felony or any other offense which involves moral turpitude, or written charges thereof may be filed by any person with the appointing authority, which shall be promptly determined. Any action of the appointing authority taken under this subsection shall be subject to appeal to the state personnel board, with the right to be heard thereby in person or by counsel, or both.

5. If an employee's promotion, transfer or reallocation were involuntary, and that employee were dismissed during the subsequent probationary period, then a serious constitutional issue under Colo. Const. Art. XII, §§ 13(8) and 13(10) might arise. However, this is another question that must be resolved on a case-by-case basis. The Board's Rule 5–2–1(A)(2) makes this event less likely to occur by conferring certified status on employees whose transfer is initiated by the appointing authority.

■ In *Turner v. City and County of Denver*, 146 Colo. 336, 361 P.2d 631 (1961), we noted that the basic purpose of civil service laws is to secure efficient public servants for positions in government. We added that while such laws seek to promote the welfare of the individual civil servant, an "overriding policy is promotion of the best interests of the public as a whole." *Id.* at 342, 361 P.2d at 634. The General Assembly has determined that it is in the public interest to subject a governmental employee to a new period of probation when that person undertakes to serve in a new position as a result of promotion, requested transfer or reallocation. We discover nothing in the Colorado Constitution that is inconsistent with the implementation of section 24-50-115(6). Therefore, we reverse the district court's ruling that this statute is unconstitutional.

### D.

The trial court struck down sections 24-50-101(3)(a) and 24-50-104(3)(g) of S.B. 308, and the rules promulgated thereunder, ruling that the statutes and rules are contrary to Article XII, section 13(1) of the Colorado Constitution, mandating that merit and fitness—to be ascertained by competitive tests of competence—be the bases of appointment and promotion in the state personnel system. We uphold the trial court's ruling that section 24-50-104(3)(g) is unconstitutional, but reverse the determination that section 24-50-101(3)(a) does not meet constitutional requirements.

■ Article XII, section 13(1) of the Colorado Constitution establishes the criteria for hiring and promotion within the state personnel system. It provides:

Appointments and promotions to offices and employments in the personnel system of the state shall be made according to merit and fitness, to be ascertained by competitive tests of competence without regard to race, creed, or color, or political affiliation.

Section 24-50-101(3)(a) states:

It is the purpose of the state personnel system, as a merit system, to assure that

a well-qualified work force is serving the residents of Colorado, that all segments of its population have an equal opportunity for entry into state employment, that recruitment be from qualified individuals from appropriate sources, and that, after fair and open competition, selection be on the basis of job-related ability and quality of performance. Affirmative action policies which are consistent with section 13 of article XII of the state constitution shall be adopted by December 31, 1981.

This statute provides for "fair and open competition" to determine "job-related ability" and "quality of performance." These factors indisputably relate directly to the constitutional standards of "merit and fitness." The statute simply elaborates the constitutional requirement that employment decisions be based on merit and fitness as established by competitive tests. We believe that it cleaves to the constitutional standard for state employee selection.

Section 24-50-104(3)(g) provides:

At the request of the appointing authority, the state personnel director may determine that the upward allocation of a position shall not be considered to create a new vacant position, and the movement of the incumbent employee with his position shall not be considered a promotion or appointment requiring new competitive tests of competence or invalidating the tests previously given for the position.

■ In order to sustain the statute it is necessary to conclude that an "upward allocation of a position" and the "movement of the incumbent employee with his position" is something other than a "promotion," which Article XII, section 13(1) of the Colorado Constitution requires to be based on merit and fitness, to be ascertained by competitive tests of competence. The purpose of competitive examination provisions in the Constitution and in civil service laws is to promote the efficiency of civil service by employing and advancing only those persons who have dem-

onstrated qualification through testing. *Roberts v. People ex rel. Duncan,* 81 Colo. 338, 255 P. 461 (1927); *Shinn v. People,* 59 Colo. 509, 149 P. 623 (1915). We must not allow this beneficent goal to be evaded by the description of a promotion by some other name. We are persuaded that an "upward allocation of a position" and the "movement of the incumbent employee with his position" are together nothing but a euphemistic description of a promotion. *See Schmidt v. Hurst,* 109 Colo. 207, 124 P.2d 235 (1942); *People ex rel. Kelly v. Milliken,* 74 Colo. 456, 223 P. 40 (1923).[6]

■ It is noteworthy that the Board's Rule 3–7–3 treats promotion and upward reallocation identically for the purpose of determination of pay. The Attorney General of Colorado has twice issued opinions that the upgrading of incumbents in positions that have been reallocated to a higher level is constitutionally indistinguishable from promotions to vacant positions. Op. Colo. Att'y Gen. 70–4451 (1970), 2643–53 (1953). Such opinions, reflecting a traditional view of the matter, have "some significance in cases involving consideration of constitutional provisions where there is room for interpretation ...." *White v. Anderson,* 155 Colo. 291, 299, 394 P.2d 333, 336 (1964). Accordingly, we hold that section 24–50–104(3)(g) violates Article XII, section 13 of the Colorado Constitution.

#### E.

■ The trial court tested section 24–50–114(2) of S.B. 308, permitting temporary appointments for up to 1040 hours of work in a twelve-month period, to ascertain whether it is within the exception found in *Colo. Const.* Art. XII, § 13(9), permitting temporary appointments for a period of up to six months without complying with personnel system hiring criteria and procedures. The court found that section 13(9) does not authorize temporary appointments for longer than six months without regard to the number of hours worked during the appointment period, and concluded that section 24–50–114(2) violates the merit selection provisions of the Colorado Constitution. We agree.

Article XII, section 13(9) of the Colorado Constitution provides:

> The state personnel director may authorize the temporary employment of persons, not to exceed six months, during which time an eligible list shall be provided for permanent positions. No other temporary or emergency employment shall be permitted under the personnel system.

Section 24–50–114(2) of S.B. 308, purportedly adopted under the authority of section 13(9), states:

> The state personnel director may, by rule, authorize principal department heads and presidents of colleges and universities to employ persons from outside the state personnel system on a temporary basis while an eligible list is being provided or in emergency or seasonable [sic] situations nonpermanent in nature, but in each case the period of employment shall not exceed six months or one thousand forty hours in any twelve-month period.

The appellants argued unsuccessfully in the trial court that since an employee working full time for six months would work 1040 hours, any period of temporary employment that did not result in more than 1040 hours of work time—certainly if confined to a twelve-month period—is within the constitutional intendment even if the temporary employment should continue longer than six months. We agree with the trial court that section 13(9) cannot be so read.

The term "six months" is clear and definite on its face. *See also* section 2–4–106, C.R.S.1973 (1980 Repl.Vol. 1B) (in constru-

---

6. In *Schmidt* we ruled that "a material change in duties and responsibilities" constituted a promotion. 109 Colo. at 216, 124 P.2d at 239. The defendants here admitted to the trial court in oral argument that employees who are upward- ly allocated are performing additional duties. We need not address the question of whether a pay increase, without additional duties, constitutes a promotion.

ing statutes, the word "month" means a calendar month). Nothing in the language of section 13(9) suggests the strained construction that the appellants advocate. Therefore, we affirm the trial court's ruling that section 24–50–114(2) is unconstitutional to the extent that it purports to authorize temporary appointments for periods longer than six calendar months. *See Colorado State Civil Service Employees Association v. Love, supra; People ex rel. Park Reservoir Co. v. Hinderlider, supra.*

### IV.

In summary, we reverse the trial court's rulings that certain provisions of S.B. 308 violate the constitutional scheme in *Colo. Const.* Art. XII, §§ 14(3) and (4) for rulemaking and delegation of authority; that section 24–50–124(1) as to separation of employees from state service contravenes the veterans' preference requirements of Art. XII, § 15(3)(a); that the establishment of probationary periods under section 24–50–115(6) is contrary to Art. XII, §§ 13(8) and 13(10); and that section 24–50–101(3)(a) does not comport with the "merit and fitness" hiring criteria in *Colo. Const.* Art. XII, § 13(1). We affirm the district court's determinations that section 24–50–104(3)(g) is contrary to the "merit and fitness" standards in Art. XII, § 13(1); and that section 24–50–114(2), purporting to authorize temporary appointments of personnel for longer than six months, cannot pass constitutional muster. The plaintiffs ask us to adjudge the constitutionality of numerous Board rules associated with these statutes. We decline to do so, because the connection between statute and rule is sometimes a subtle one, and the parties have not fully addressed these connections in their arguments to this court. Instead, we remand the case to the district court for determination of the constitutionality of the rules under the principles set forth in this opinion.

We affirm the judgment in part and reverse it in part, and remand the case to the trial court for further proceedings in accordance with this opinion.